David M. Clark, WY State Bar #6-4133
RAGAIN & CLARK, PC
1501 Stampede Ave., Unit 9010
Cody, Wyoming 82414
(307) 388-6400 office
(307) 333-0325 fax
dave@mtwylaw.com

Jon M. Moyers, WY State Bar #6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
(406) 655-4900 office
(406) 655-4905 fax
 jon@jmoyerslaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRI COUNTY TELEPHONE ASSOCIATION, INC., a Wyoming corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>TWIN CITY FIRE INSURANCE COMPANY and THE HARTFORD INSURANCE GROUP d/b/a HARTFORD FINANCIAL PRODUCTS,<br><br>　　　　　Defendants. | COMPLAINT AND JURY DEMAND |

## IDENTIFICATION OF CASE AND PARTIES

1.	Plaintiff Tri County Telephone Association, Inc. ("TCT"), is a Wyoming corporation with its principal place of business in Park County, Wyoming.

2.	Twin City Fire Insurance Company ("Insurer") is a foreign corporation with its principal place of business in Indianapolis, Indiana.  Its registered agent for service of process in Wyoming is CT Corporation.  Upon information and belief, Insurer

is authorized to transact business in Wyoming and regularly transacts business here under various assumed business names, including the Hartford Insurance Group and Hartford Financial Products.

    3.    Insurer issued to TCT the Private Choice Ovation Policy, Wyoming, Policy No. 00 KB 0282521-14, providing for Directors, Officers and Entity Liability Coverage in the amount of $4,000,000, for the policy period from January 1, 2014 to January 1, 2015 ("Policy").  TCT thereafter purchased extended coverage of the Policy, effective January 1, 2015, through January 1, 2021.  A copy of the Policy and Endorsement No. 6 are attached as Ex. 1.

    4.    Defendant The Hartford Insurance Group d/b/a Hartford Financial Products ("Hartford") is a foreign corporation with its principal place of business in Hartford, Connecticut.  At all times relevant, Hartford was responsible for handling of claims reported by TCT under the Policy on behalf of Twin City Fire Insurance Company, as the parent company.  Upon information and belief, Hartford is authorized to transact business in Wyoming and regularly transacts business here.

    5.    For all purposes herein, Defendants acted in concert.

    6.    Insurer is legally liable for the conduct of Hartford.

    7.    TCT is the Named Entity or Insured Entity under the Policy and entitled to the coverages for the events at issue, as provided for by the express and implied terms of the Policy and Wyoming law.

    8.    This Court has the authority to determine the respective rights and other legal obligations of the parties, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).  The dispute between the parties constitutes a justiciable controversy.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this matter because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship among the parties. 28 U.S.C. § 1332.

10. This Court has personal jurisdiction over Defendants who conducted business in this judicial district in Wyoming; Defendants entered into the Policy which was to be performed in this judicial district in Wyoming; the Policy was delivered in this judicial district in Wyoming; and, the claims asserted arise out of Defendants' activities within the state.

11. Venue properly lies in this Court pursuant 28 U.S. C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and is where the policyholder instituting the action resides.

12. This claim is not barred by any statute of limitations, release, or other doctrine.

## ALLEGATIONS COMMON TO ALL COUNTS

13. TCT was incorporated on January 21, 1953 as a nonprofit corporation to act as a cooperative providing utilities in Wyoming ("Cooperative"). TCT also invested in for-profit ventures through four subsidiaries.

14. TCT consisted of 825 members.

15. On July 24, 2013, the TCT Board was approached by Neil Schlenker, a member, on behalf of his affiliated entity, BHT Holdings, Inc., to acquire the Cooperative. Mr. Schlenker submitted a formal offer on behalf of BHT Holdings, Inc., to acquire the Cooperative, memorialized in a Letter Agreement.

16. On September 19, 2014, the TCT Board entered into a LLC Membership Interest Purchase Agreement (the "LLC Purchase Agreement") and the Definitive Agreement and Plan of Merger (the "Merger Agreement") with BHT Holdings and its affiliate, BHT Investments, LLC. The LLC Purchase Agreement contemplated the sale of certain limited liability company subsidiaries of TCT to BHT Investments, while the Merger Agreement contemplated the acquisition by BHT Holdings of all TCT stock through a reverse triangular merger. The closing of the LLC Purchase Agreement was a condition precedent of the Merger Agreement, and both agreements required a two-thirds affirmative vote of TCT's cooperative members.

17. On December 16, 2014, the TCT Board held its last meeting during which the Board agreed by resolution that if the members approved the merger, the Board would resign.

18. On December 20, 2014, the TCT membership overwhelmingly voted to approve the merger of the Cooperative with BHT; the vote was certified on December 23, 2014 by TCT's five-member Credentials and Elections Committee.

19. Pursuant to TCT's bylaws, members had a right to protest or object to the vote if an objection was made "within three business days following the adjournment of the meeting in which the election results are announced." No member objected to the final, certified vote.

20. On December 20, 2014, the TCT Board became a lame duck board by which any new business action would be ultra vires.

21. Based on the legal vote of the membership, BHT Merger Corporation, a wholly owned subsidiary of BHT Holdings, merged with TCT, with TCT as the surviving

Page 4

corporation. All interests in TCT previously held by the cooperative members were redeemed in exchange for cash and other consideration, leaving BHT Holdings as the owner of all issued and outstanding stock in TCT.

22. TCT retained all legal rights under the Policy and is the proper party in interest.

23. On December 28, 2015, Joe Campbell, a former director, and his wife, Barbara Campbell, filed a putative class action lawsuit ("Class Action") against TCT in the Fifth Judicial District, Park County, Wyoming, Civil Action Case No. 28260, for and on behalf of the 825 Cooperative members.

24. The relative membership interest held by the Campbells in the Cooperative at that time was 1:825 or 0.12 percent of the entire membership.

25. The Class Action was filed more than one year after Joe Campbell had ceased serving as an active director of TCT and, by Board resolution, lacked authority to act on behalf of the Cooperative as a director.

26. In the Class Action against BHT and TCT, its former directors, officers, and outside counsel, as amended, the Class Representatives alleged various claims related to the merger for voting irregularities, violations of bylaws, fraud, misrepresentation, civil conspiracy to defraud and deceive, aiding and abetting, breach of fiduciary duties by the officers and directors, conversion, ultra vires, waste, constructive fraud, state securities violations, and legal malpractice. Relief requested in the Class Action included an award of tens of millions of dollars in compensatory and punitive damages.

27.     On February 8, 2016, the Complaint was amended to include Steve Harper, the former Chief Financial Officer as a party defendant, and he was served with process on February 9, 2016.  The amendment in the First Amended Complaint represented a new claim against a new party defendant, more than one year after Joe Campbell had ceased serving as an active director of TCT and, by Board resolution, lacked authority to act on behalf of the Cooperative as a director.

28.     On December 27, 2016, the Amended Complaint was amended again.

29.     On May 30, 2018, the District Court certified the Second Amended Complaint as a lass Action, for and on behalf of the 825 Cooperative members.  Joe and Barbara Campbell were designated Class Representatives because their claims arose from the same nucleus of operative facts and their claims were typical and representative of the other members.

30.     In the order granting class certification, the District Court found that the action by the Class Representatives was not collusive but instead on behalf of the entire class of Cooperative members.

31.     On September 27, 2020, Joe Campbell died, leaving only Barbara Campbell as Class Representative.

32.     On March 4, 2022, the District Court approved the addition of William Loveland as an additional Class Representative. Neither Barbara Campbell nor William Loveland acted as a director, officer, or any other managerial capacity within the year preceding the filing of the original complaint.

33.     At the conclusion of discovery and shortly before trial, both the Class Representatives and TCT moved the District Court for summary judgment.

34. On October 10, 2022, the District Court granted summary judgment in favor of the defendants on all claims; the District Court denied the Class Representatives' motion for partial summary judgment.

35. The Class Representatives appealed the District Court's rulings to the Wyoming Supreme Court, which affirmed the entry of summary judgment on October 24, 2023.

36. Mandate was issued by the Wyoming Supreme Court to the District Court on November 9, 2023.

37. The District Court subsequently entered its Order Allowing Costs in favor of TCT.

## COUNT I – DECLARATORY RELIEF

38. TCT incorporates all preceding allegations as if repeated herein.

39. Effective January 1, 2014, Defendants agreed to insure TCT under the Policy.

40. According to the Private Choice Ovation Policy Declarations Wyoming section of the Policy the aggregate limit of liability for "Directors, Officers and Entity Liability" was $4 million. *See* Ex. A.

41. According to the terms of the Private Ovation section of the Policy:

VII. DEFENSE AND SETTLEMENT

Soley with respect to all **Liability Coverage Parts**[1]:

(A) The Insurer shall have the right and duty to defend **Claims** covered under the Policy, even if such **Claim** is groundless, false or fraudulent, provided that (1) the Insured give notice to the Insurer in accordance with the

---

[1] Highlighted text in original.

applicable Liability Coverage Parts' notice provisions . . .  If the Insurer has the duty to defend a Claim, the Insurer's duty to defend such Claim shall cease upon exhaustion of any applicable Limit of Liability.

\*\*\*

XI.  ALLOCATION

Solely with respect to all **Liability Coverage Parts**:
Where Insureds who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such Claim includes both covered and uncovered matters, then coverage shall apply as follows:

(A)  with respect to a covered **Claim** for which the Insurer has the duty to defend:  (1) 100% of the **Insured's Defense Costs** shall be allocated to covered **Loss** . . .

42.  According to the terms of the Directors, Officers and Entity Liability Coverage portion of the Policy:

   I.  INSURING AGREEMENTS

      A.  Insured Person Liability

The Insurer shall pay Loss on behalf of the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**, except for **Loss** that an **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

\*\*\*

   II.  DEFINITIONS

The following terms, whether used in singular or plural, shall have the meanings specified below:

- "**Claim**" means any (1) **Insured Person Claim**; (2) **Entity Claim**; (3) **Derivative Demand**.
- "**Damages**" means the amounts, other than **Defense Costs**, that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**.

\*\*\*

- "**Entity Claim**" means any (1) written demand for monetary damages or other civil non-monetary relief commenced by the recipe of such demand; (2) civil proceeding, including an arbitration or other alternative dispute proceeding commenced by the service of a complaint, filing of a demand of arbitration or similar pleading . . against an **Insured Entity**.
- "**Insured Person**" means any (1) **Manager**; or (2) **Employee**.

***

- "**Insureds**" means any: (1) **Insured Entity**; or (2) **Insured Person**.

***

- "**Wrongful Act**" means any actual or alleged: (1) error, misstatement, misleading statement, act, omission, neglect, or breath of duty committed by an **Insured Person** in their capacity as such or in their **Outside Capacity**, or, with regard to Insuring Agreement (C) an **Insured Entity**; or (2) matter claimed against an **Insured Person**, solely by reasons of their serving in such capacity, including service in an **Outside Capacity**.

***

IV.     EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

(H) In connection with any **Claim** brought or maintained by or on behalf of any **Insureds** (in any capacity) or any security holder of an **Insured Entity** provided that this exclusion shall not apply to the portion of Loss directly resulting from:

***

(2) a **Derivative Action** or **Derivative Demand**;

***

(5) a civil proceeding by or on behalf of a former **Manager** who has not served in such capacity for at least one year prior to such Claim being made, provided that such **Claim** is made without the assistance, participation or solicitation of any current **Manager** or any former **Manager** who has served in such capacity during the one year prior to such **Claim** being made . . .

43.     Exclusions in the Policy must be read narrowly in favor of coverage and construed against the drafter and insurer, here Defendants.

44.     Exceptions from policy exclusions must be read broadly in favor of coverage of the insured.

45.     In the Policy, Defendants did not exclude from coverage class action lawsuits.

46. Upon notice of the lawsuit, TCT tendered its defense to Defendants and requested indemnity for any judgment or settlement of the Class Action.

47. TCT thus provided Defendants with timely notice of the Class Action per the Policy.

48. Thereafter, TCT kept Defendants reasonably informed of the Class Action and fully cooperated with Defendants, including sending copies of the amended complaints to them.

49. The Class Action constituted, or potentially constituted, in whole or in part, a covered "Claim" under the Policy.

50. The Class Action was not excluded from coverage under the Policy.

51. The damages sought in the Class Action constituted "Damages" under the Policy.

52. Under the terms of the Policy, Defendants owed TCT a defense of the Class Action and were obligated to reimburse TCT for its defense costs, including attorney's fees and case costs.

53. Under Wyoming law, it is a well settled that "the duty of the insurer to defend is more extensive than its duty to indemnify the insured." *Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510, 513 (Wyo.2000); *see also First Wyoming Bank v. Continental Ins. Co.*, 860 P.2d 1094, 1097–98 (Wyo.1993); 46 C.J.S. Ins. § 1145(a) ("The insurance company owes its insured a duty to defend actions brought against its insured; such duty is broader than the company's duty to indemnify ..."). The duty to defend is a "separate and distinct" contractual requirement under the policy. *First Wyoming Bank*, 860 P.2d at 1073; *see also* 46 C.J.S. Ins. § 1145(a) and (c).

Page 10

"The insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage." *Shoshone First Bank*, 2 P.3d at 513; *see also Hutchinson Oil Co. v. Federated Serv. Ins. Co.*, 851 F.Supp. 1546, 1553 (D.Wyo.1994) (quoting *Axton Cross Co. v. Lumbermen's Mut. Cas. Co.*, 176 A.D.2d 482, 574 N.Y.S.2d 561, 562 (N.Y.App.Div.1991)). If there is any doubt as to whether the insurance company need defend the insured, that doubt must be resolved in favor of the insured. *First Wyoming Bank*, 860 P.2d at 1095; *see also* 46 C.J.S. Ins. § 1145(a). If the policy potentially covers one or more claims, the insurer has a duty to defend all claims and is "liable for all of the costs of defending the action." *Shoshone First Bank*, 2 P.3d at 514, 515; *Alm v. Hartford Fire Ins. Co.*, 369 P.2d 216, 219 (Wyo.1962).

54. Notwithstanding its duty to defend, Defendants denied *any* defense to TCT on any claims in the Class Action on the contention that "it appears that the potential Loss in this matter is in connection with a Claim brought or maintained by or on behalf of Insured (Campbell), and therefore the exclusion bars coverage." *See* Ex. B, September 28, 2016 Letter from Michael S. Knox, Claims Counsel for Hartford, to TCT Chief Financial Officer Steve Harper.

55. By denying TCT a defense Defendants are estopped from contesting coverage.

56. Defendants wrongly denied a defense on their mistaken belief that the Class Action was filed by a former manager, namely Joe Campell, within one year from the date when he actively served in the capacity as a "Manager." *Id.*

57. Defendants wrongly denied defense of the Class Action on their mistaken belief that all claims made in the Class Action fell under the so-called "Insured versus Insured" exclusion in the Policy.

58. Defendants wrongly denied defense of the Class Action on their mistaken belief that the Class Action was "brought by or on behalf of" a former manager, namely Joe Campbell.

59. Defendants wrongly denied defense of the Class Action on their mistaken belief that Plaintiff was the "Insured" in the "Insured versus Insured" analysis.

60. Defendants wrongly denied defense of the Class Action after Mr. Harper was sued and served as a party defendant on a covered claim under the Policy.

61. Defendants failed to acknowledge and act reasonably promptly, affirm or deny coverage of claims within a reasonable time, or investigate the claim against Mr. Harper.

62. Defendants failed to defend the Class Action under a reservation of rights.

63. Defendants failed to defend the Class Action under the allocation provision of the Policy.

64. Defendants failed to file a declaratory judgment action to seek judicial clarification of the duty to defend under the Policy.

65. Defendants failed to associate themselves in the defense.

66. Defendants failed to investigate the Class Action, even after Mr. Harper was added as a party defendant.

67. Defendants knew or should have known that by denying TCT a defense they threatened the ability of TCT to afford a viable defense and to survive the lawsuit.

68. Defendants' denial of a defense of the Class Action violated the terms of the Policy and Wyoming law.

69. TCT was thereby forced to protect its interests and fund the entirety of the defense and case costs in the complex Class Action, which constituted part of its "Loss" under the Policy.

70. Throughout the Class Action, TCT continued to request a defense and coverage for the claims made in the Class Action, which requests were repeatedly denied by Defendants.

71. Given the allegations in the Class Action, the litigation was complex, time consuming, and expensive, with multiple pleadings, depositions, investigations, and hearings. Costs incurred by TCT in the Class Action for the extensive discovery, document searches and management, depositions, and experts were substantial but necessary to the defense (and livelihood) of TCT.

72. TCT was forced to obtain counsel to represent each of the named defendants based on the company policy to indemnify each for any alleged liability associated with their work for or on behalf of TCT and the interwoven nature of claims related to TCT. Counsel for each defendant agreed to a joint defense given the indemnification agreement and interrelation of the claims.

73. TCT paid for its legal defense and case costs in an amount in excess of $4 million.

74. TCT therefore prays for relief:

      a.      For a declaration pursuant to 28 U.S.C. 2201(a) that Defendants were obligated to have provided a defense to TCT in the Class Action;

      b.      For an award of its attorney's fees and costs incurred in the Class Action;

      c.      For an award of its attorney's fees and costs in this action; and,

      d.      For an award of such other and further relief as the Court deems just and equitable, including pre-judgment and post-judgment interest.

## COUNT II – BREACH OF CONTRACT

75. Plaintiff incorporates the preceding allegations as if repeated herein.

76. In all such ways, Defendants breached the terms of the Policy when it denied a defense to TCT.

77. Defendants also breached the implied duties of good faith and fair dealing when it denied a defense to TCT and denied TCT the benefit of its agreement.

78. Defendants failed to perform its obligations under the Policy in good faith and acted inconsistent with the agreed common purpose and justified expectations of TCT.

79. Defendants wrongly concluded that the Class Action was an excluded claim under the Policy.

80. As a direct and proximate result of Defendants' breach of contract, TCT was injured.

81. TCT is entitled to all contract damages available under Wyoming law.

82. TCT therefore prays for relief:

    a. For an award of its attorney's fees and costs incurred in the Class Action;

    b. For an award of its attorney's fees and costs in this action; and,

    c. For an award of such other and further relief as the Court deems just and equitable, including pre-judgment and post-judgment interest.

## COUNT III – FIRST PARTY BAD FAITH

83. TCT incorporates all preceding allegations as if repeated herein.

84. Defendants acted in bad faith basis when it unreasonably denied a defense to TCT.

85. Insurer and Hartford violated their duty of good faith and good dealing during their investigation, handling and denial of the defense of the Class Action.

86. The obligation to defend TCT for claims in the Class Action was not fairly debatable.

87. In all such ways, Defendants misrepresented facts or insurance policy provisions relating to coverages available to TCT.

88. Defendants engaged in unfair and deceptive acts or practices in the business of insurance.

89. Defendants violated the terms of the Wyoming Unfair Claims Settlement Practices Act, W.S. § 26-13-124.

90. TCT was thereby injured and harmed by the bad faith of Defendants.

91. TCT is entitled to all damages available under Wyoming law.

92. TCT therefore prays for relief:

    a. For an award of its attorney's fees and costs incurred in the Class Action;

    b. For an award of its attorney's fees and costs in this action; and,

    c. For an award of other and further relief as the Court deems just and equitable, including pre-judgment and post-judgment interest.

## DAMAGES FOR EACH COUNT

93. TCT is entitled to all damages available under Wyoming law, including the total defense costs and fees incurred during the entire proceeding.

94. TCT is entitled to its attorney's fees and costs in this matter.

## JURY DEMAND

Plaintiff TCT demands a jury on all triable issues.

DATED this 28th day of December 2024.

                                        Attorneys for Plaintiff TCT

By: _____
David M. Clark, WY State Bar #6-4133
RAIGAN & CLARK
(307) 388-6400 office
(307) 333-0325 fax
1501 Stampede Ave., Unit 9010
dave@mtwylaw.com

Jon M. Moyers, WY State Bar #6-3661
MOYERS LAW P.C.
3936 Avenue B, Suite D
Billings, Montana 59102
 (406) 655-4900
(406) 655-4905 fax
 jon@jmoyerslaw.com