# IMPORTANT NOTICE
## (Privately Held)

As a Hartford insured, you now have free and exclusive access to a service designed to help you better protect your company from employment-related litigation. Go to our website, www.hartfordhelp.com and register your company today.

**Your registration Code is: HFP2-07**

This site provides you with timely information on employment litigation trends, laws and best practices. As a Hartford EPL policyholder, you have access to enhanced services such as:

- Online Sexual Harassment training for your employees
- Anti-Discrimination training
- Training designed to help you to comply with California AB 1825
- Sample policies and procedures

We hope you take advantage of these valuable services offered free of charge exclusively to Hartford Employment Practices Liability customers.

Thank you for choosing The Hartford.

## EXHIBIT "1"

TWIN CITY FIRE INSURANCE CO.
ONE COLLEGE PARK, INDIANAPOLIS, IN 46268-0930
A stock insurance company, herein called the Insurer



# PRIVATE CHOICE OVATION℠ POLICY
## DECLARATIONS
## WYOMING

**Policy Number:** 00 KB 0282521-14

**NOTICE:** THE LIABILITY COVERAGE PARTS SCHEDULED IN ITEM 5 OF THE DECLARATIONS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO THE INSURER IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE RETENTION. PAYMENTS OF DEFENSE COSTS ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

**ITEM 1: Named Entity and Address:**

TRI COUNTY TELEPHONE ASSOCIATION, INC.
405 S 4TH ST.
BASIN, WY 82410

**ITEM 2: Producer's Name and Address:**

84375
UNICO GROUP INC
4435 O STREET
LINCOLN, NE 68510

**ITEM 3: Policy Period:**

(A) Inception Date: 1/01/14

(B) Expiration Date: 1/01/15

12:01 a.m. local time at the address shown in ITEM 1

**ITEM 4: Premium:**          $19,336.00

**ITEM 5:  Liability Coverage Part Elections:**

Only those **Liability Coverage Parts** and Coverage Features that are designated with an "X" are included under this Policy.

☐   "Combined Aggregate Limit of Liability For All **Liability Coverage Parts**" $N/A
☐   "Defense Outside the Limit of Liability (50%)" for the following coverage parts:

    ☐   Directors, Officers and Entity Liability Coverage Part
    ☐   Employment Practices Liability Coverage Part
    ☐   Fiduciary Liability Coverage Part

       ☐   Additional Fiduciary Liability Coverage Part Defense Outside the Limit of Liability

If both the "Combined Aggregate Limit of Liability For All **Liability Coverage Parts**" and the "Defense Outside the Limit of Liability (50%)"options are selected, the maximum aggregate defense outside the limits paid by the Insurer shall be equal to 50% of the "Combined Aggregate Limit of Liability For All **Liability Coverage Parts**".

| | COVERAGE PART | AGGREGATE LIMIT OF LIABILITY | RETENTION | PRIOR OR PENDING DATE | | COVERAGE FEATURES |
|---|---|---|---|---|---|---|
| X | Directors, Officers and Entity Liability | $ 4,000,000 | Insured Person Liability $ <br><br> Corporate Reimbursement $10,000 | 01/01/14 | X | Entity Liability Coverage <br><br> Retention: $ 10,000 <br><br> Prior or Pending Date: 01/01/14 |
| X | Employment Practices Liability | $1,000,000 | $10,000 | 01/01/14 | X | Third Party Liability Coverage <br><br> Sub-limit of Liability: $1,000,000 <br><br> Retention: $10,000 <br><br> Prior or Pending Date: 01/01/14 |
| X | Fiduciary Liability | $1,000,000 | $0 | 01/01/14 | X | Settlement Program Coverage <br><br> Retention: $0 <br><br> Prior or Pending Date: 01/01/14 |
| | | | | | X | HIPAA Sub-limit of Liability: $25,000 |

© 2012, The Hartford

**ITEM 6: Non-Liability Coverage Part Elections:**

Only those **Non-Liability Coverage Parts** that are designated with an "X" are included under this Policy

| COVERAGE PART | LIMIT(S) OF INSURANCE | RETENTION |
|---|---|---|
| ☐ Crime | See Crime Coverage Part Dec. Page, Form No.N/A | See Crime Coverage Part Dec. Page, Form No.N/A |
| ☐ Kidnap and Ransom/Extortion | See Kidnap and Ransom/Extortion Coverage Part Dec. Page, Form No.N/A | See Kidnap and Ransom/Extortion Coverage Part Dec. Page, Form No.N/A |

**ITEM 7: Extended Reporting Period:**

**Option 1 (without Reinstated limits)**

**(A)** Duration: Unlimited

**(B)** Premium*:

**Reinstated limits are available for an additional premium.**

**Option 2 (without Reinstated limits)**

**(A)** Duration: 125 months

**(B)** Premium*: 125%

**Reinstated limits are available for an additional premium.**

\*     Premium for the Extended Reporting Period elected shall be the indicated percentage of the sum of the annual premium specified for all **Liability Coverage Parts** plus the annualized amounts of any additional premiums charged during the Policy Period. The Extended Reporting Period is not available for the **Non-Liability Coverage Parts**. This premium does not reflect any additional premium that will be charged should the **Insured** elect to reinstate the Limits of Liability during any Extended Reporting Period.

**ITEM 8: Endorsements:**

This Policy includes the following endorsements at issuance:

SEE FORM GU207 (SCHEDULE OF FORMS AND ENDORSEMENTS)

**ITEM 9: Address For Notices to Insurer:**

**For Claims other than Kidnap and Ransom/Extortion:**

The Hartford
Claims Department
Hartford Financial Products
277 Park Ave., 15th Floor
New York, New York 10172
HFPClaims@thehartford.com
Fax: (917) 464-6000

**For all notices other than Claims:**

The Hartford
Product Services
Hartford Financial Products
277 Park Ave., 15th Floor
New York, New York 10172
HFPExpress@thehartford.com
Fax: (866) 586-4550

For Kidnap and Ransom/Extortion Claims see Kidnap and Ransom/Extortion Coverage Part Declarations.

This Policy shall not be valid unless countersigned by the Insurer's duly authorized representative.

GU207
(6-78)

# ENDORSEMENT

This endorsement, effective on 1/01/14 at 12:01 A.M standard time, forms a part of

Policy No.    00 KB 0282521-14 of the TWIN CITY FIRE INSURANCE CO.

Issued to    TRI COUNTY TELEPHONE ASSOCIATION, INC.

*André A. Napoli*

André A. Napoli, President

## SCHEDULE

|   | RN00N02600 | 5/93 | IN WITNESS PAGE |
|---|---|---|---|
|   | PO00H00300 | 12/12 | PRIVATE CHOICE OVATION POLICY |
|   | PO00H30000 | 12/12 | DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART |
|   | PO00H40000 | 12/12 | EMPLOYMENT PRACTICES LIABILITY COVERAGE PART |
|   | PO00H50000 | 12/12 | FIDUCIARY LIABILITY COVERAGE PART |
| 1 | HG00H06801 | 2/12 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| 2 | PO00H03600 | 12/12 | NUCLEAR LIABILITY EXCLUSION |
| 3 | PO49H00400 | 12/12 | WYOMING AMENDATORY ENDORSEMENT |
| 4 | PO49H00600 | 12/12 | WYOMING ACKNOWLEDGMENT - DEFENSE WITHIN LIMITS |
| 5 | HR49H00300 | 6/05 | WYOMING CANCELLATION AND NON-RENEWAL AMENDATORY ENDORSEMENT |
|   | HG00H05602 | 2/12 | CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM |
|   | HR00H09300 | 2/07 | PRODUCER COMPENSATION NOTICE |
|   | GN167413 | 4/99 | WYOMING DOCKET NO 85-74 |

Rev. Ed. Date (04/02)
GU 207 (6-78)

# PRIVATE CHOICE OVATION<sup>SM</sup> POLICY

**NOTICE: THE LIABILITY COVERAGE PARTS SCHEDULED IN ITEM 5 OF THE DECLARATIONS PROVIDE CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO THE INSURER IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE RETENTION. PAYMENTS OF DEFENSE COSTS ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

## COMMON TERMS AND CONDITIONS

### I.  TERMS AND CONDITIONS

**(A)** All Coverage Parts included in this Policy are subject to the following Common Terms and Conditions. If any provision in these Common Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

**(B)** Except as otherwise provided by specific reference to other Coverage Parts, the terms and conditions of each Coverage Part shall apply only to such Coverage Part.

### II.  COMMON DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings specified below:

- **"Affiliate"** means any insurance company controlling, controlled by or under common control with the Insurer.
- **"Application"** means the application for this Policy, including any materials or information submitted therewith or made available to the Insurer during the underwriting process, which application shall be on file with the Insurer. Such **Application** shall be deemed a part of this Policy and attached hereto. In addition, **Application** includes any warranty, representation or other statement provided to the Insurer within the past three years in connection with any policy or coverage part of which this Policy is a renewal or replacement.
- **"Claim"** shall have the meaning specified for such term in each Coverage Part.
- **"Controlled Partnership"** means a limited partnership in which and so long as the **Named Entity** owns or controls, directly or indirectly, more than 50% of the limited partnership interest and an **Insured Entity** is the sole general partner.
- **"Damages"** shall have the meaning specified for such term in each Coverage Part.
- **"Debtor in Possession"** means a "debtor in possession" as such term is defined in Chapter 11 of the U.S. Bankruptcy Code as well as any equivalent status under any similar law.
- **"Defense Costs"** means:

  **(1)** reasonable and necessary legal fees and expenses incurred in the defense or appeal of a **Claim**;

  **(2)** **Extradition Costs**; or

  **(3)** the costs of appeal, attachment or similar bonds, provided that the Insurer shall have no obligation to furnish such bonds.

  However, **Defense Costs** shall not include:

**(a)** salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds**;

**(b)** any fees, expenses or costs which are incurred by or on behalf of a party which is not a covered **Insured**; or

**(c)** any fees, expenses or costs which were incurred prior to the date on which the Insurer received written notice of **Claim** from the **Insured**.

- **"Domestic Partner"** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.
- **"Employee"** means any natural person who was, is or shall become a(n):

  **(1)** employee of an **Insured Entity** including any part time, seasonal, temporary, leased, or loaned employee; or

  **(2)** volunteer with an **Insured Entity**.

  However, this definition of **Employee** shall hereby expressly not apply for purposes of the **Non-Liability Coverage Parts**.

- **"ERISA"** means the Employee Retirement Income Security Act of 1974.
- **"Extradition Costs"** means reasonable and necessary fees and expenses directly resulting from a **Claim** in which an **Insured Person** lawfully opposes, challenges, resists or defends against any request for the extradition of such **Insured Person** from his or her current country of employ and domicile to any other country for trial or otherwise to answer any criminal accusation, including the appeal of any order or other grant of extradition of such **Insured Person**.
- **"Financial Insolvency"** means the status of an **Insured Entity** as a result of:

  **(1)** the appointment of any conservator, liquidator, receiver, rehabilitator, trustee, or similar official to control, supervise, manage or liquidate such **Insured Entity**; or

  **(2)** such **Insured Entity** becoming a **Debtor in Possession**.

- **"Insured Entity"** means:

  **(1)** the **Named Entity;** or

  **(2)** any **Subsidiary**.

  **Insured Entity** shall include any such entity as a **Debtor in Possession**.

  **Insured Entity** shall also include any such entity in its capacity as a general partner of a **Controlled Partnership**.

- **"Insured Person"** shall have the meaning specified for such term in each Coverage Part.
- **"Insureds"** shall have the meaning specified for such term in each Coverage Part.
- **"Interrelated Wrongful Acts"** means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.
- **"Liability Coverage Part"** means the Directors, Officers and Entity Liability, Employment Practices Liability, and Fiduciary Liability Coverage Parts, if included in ITEM 5 of the Declarations.
- **"Loss"** means **Defense Costs** and **Damages**.
- **"Manager"** means any natural person who was, is or shall become a(n):

  **(1)** duly elected or appointed director, advisory director, board observer, advisory board member, officer, member of the board of managers or management committee member of an **Insured Entity;**

  **(2)** **Employee** in his/her capacity as legal counsel to an **Insured Entity;** or

    **(3)** executive of an **Insured Entity** created outside the U.S. to the extent that such executive holds a position equivalent to those described in (1) or (2) above.

However, this definition of **Manager** shall hereby expressly not apply for the purposes of the Kidnap and Ransom/Extortion Coverage Part.

- **"Named Entity"** means the entity named in ITEM 1 of the Declarations.
- **"Non-Liability Coverage Part"** means the Crime and Kidnap and Ransom/Extortion Coverage Parts in ITEM 6 of the Declarations.
- **"Notice Managers"** shall have the meaning specified for such term in each Coverage Part.
- **"Policy Period"** means the period from the Inception Date to the Expiration Date set forth in ITEM 3 of the Declarations or any earlier cancellation date.
- **"Pollutants"** means any solid, liquid, gaseous or thermal irritant, nuisance or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalies, chemicals, odors, noise, lead, oil or oil product, radiation, asbestos or asbestos-containing product, waste and any electric, magnetic or electromagnetic field of any frequency. Waste includes, without limitation, material to be recycled, reconditioned or reclaimed. **Pollutants** also means any substance located anywhere in the world identified on a list of hazardous substances issued by any federal agency (including, nonexclusively, the Environmental Protection Agency) or any state, county, municipality or locality or counterpart thereof, or any foreign equivalent thereof.
- **"Subsidiary"** means any:

    **(1)** corporation in which and so long as the **Named Entity** owns or controls, directly or indirectly, more than 50% of the outstanding securities representing the right to vote for the election of the board of directors of such corporation;

    **(2)** limited liability company in which and so long as the **Named Entity** owns or controls, directly or indirectly, the right to elect, appoint or designate more than 50% of such entity's managing members;

    **(3)** a **Controlled Partnership**;

    **(4)** corporation operated as a joint venture in which and so long as the **Named Entity** owns or controls, directly or indirectly, exactly 50% of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the **Named Entity** solely controls the management and operation of such corporation; or

    **(5)** foundation, charitable trust or political action committee in which and so long as such entity or organization is controlled by the **Named Entity** or any **Subsidiary** as defined (1) through (4) above.

- **"Wage and Hour Violation"** means any actual or alleged violation of the duties and responsibilities that are imposed upon an **Insured** by any federal, state or local law or regulation any where in the world, including but not limited to the Fair Labor Standards Act or any similar law (except the Equal Pay Act), which govern wage, hour and payroll practices. Such practices include but are not limited to:

    **(1)** the calculation and payment of wages, overtime wages, minimum wages and prevailing wage rates;

    **(2)** the calculation and payments of benefits;

    **(3)** the classification of any person or organization for wage and hour purposes;

    **(4)** reimbursing business expenses;

    **(5)** the use of child labor; or

    **(6)** garnishments, withholdings and other deductions from wages.

- **"Wrongful Act"** shall have the meaning specified for such term in each Coverage Part.

## III. COVERAGE EXTENSIONS

### (A) Spousal/Domestic Partner Liability Coverage

Coverage shall apply to the lawful spouse or **Domestic Partner** of an **Insured Person** for a **Claim** made against such spouse or **Domestic Partner**, provided that:

**(1)** such **Claim** arises solely out of:

    **(a)** such person's status as the spouse or **Domestic Partner** of an **Insured Person;** or

    **(b)** such spouse or **Domestic Partner's** ownership of property sought as recovery for a **Wrongful Act**;

**(2)** the **Insured Person** is named in such **Claim** together with the spouse or **Domestic Partner**; and

**(3)** coverage of the spouse or **Domestic Partner** shall be on the same terms and conditions, including any applicable Retention, as apply to coverage of the **Insured Person** for such **Claim**.

No coverage shall apply to any **Claim** for a **Wrongful Act** of such spouse or **Domestic Partner**.

### (B) Estates and Legal Representatives

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** made against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** shall be deemed to be a **Claim** made against such **Insured Person**. No coverage shall apply to any **Claim** for a **Wrongful Act** of such estate, heirs, legal representatives or assigns.

## IV. LIMIT OF LIABILITY

**(A)** The Limit of Liability for each **Liability Coverage Part** in ITEM 5 of the Declarations shall be the maximum aggregate amount that the Insurer shall pay under such Coverage Part for all **Loss** from all **Claims** covered under such Coverage Part.

**(B)** Notwithstanding the above, if a Combined Aggregate Limit of Liability For All Coverage Parts is included in ITEM 5 of the Declarations, then:

**(1)** the Combined Aggregate Limit of Liability For All Coverage Parts shall be the maximum aggregate amount that the Insurer shall pay for all **Loss** from all **Claims** covered under all included **Liability Coverage Parts** combined; and

**(2)** any amount specified as a Limit of Liability for any individual **Liability Coverage Part** in ITEM 5 of the Declarations shall be part of, and not in addition to, the amount stated as the Combined Aggregate Limit of Liability For All Coverage Parts.

**(C)** If any Limit of Liability or Limit of Insurance is exhausted, the premium for this Policy shall be deemed fully earned.

## V. DEFENSE COSTS

Solely with respect to all **Liability Coverage Parts**:

**(A)** **Defense Costs** shall be part of, and not in addition to, each applicable Limit of Liability. Payment of **Defense Costs** by the Insurer shall reduce each Limit of Liability.

**(B)** Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then payment of **Defense Costs** shall be in addition to such applicable Limit of Liability, provided that:

**(1)** if the Combined Aggregate Limit of Liability For All Coverage Parts is not included in ITEM 5 of the Declarations, then the maximum aggregate amount that the Insurer shall pay for all **Defense Costs** from all **Claims** covered under a **Liability Coverage Part** shall be equal to 50% of the Aggregate Limit of Liability for such **Liability Coverage Part**. However, if the Additional Fiduciary Liability Coverage Part Defense Outside the Limit of Liability option is included, the maximum aggregate amount the Insurer shall pay for all **Defense Costs** from all **Claims** covered under the Fiduciary Liability Coverage Part shall be equal to 100% of the Aggregate Limit of Liability for the Fiduciary Liability Coverage Part.

**(2)** If a Combined Aggregate Limit of Liability For All Coverage Parts is included in Item 5 of the Declarations, then the maximum aggregate amount that the Insurer shall pay for all **Defense Costs** from all **Claims** covered under all included **Liability Coverage Parts** combined shall be equal to 50% of the Combined Aggregate Limit of Liability.

**(3)** If the amount available for **Defense Costs** stated in (1) or (2) above is exhausted by the payment of **Defense Costs**, then **Defense Costs** shall be paid by the Insurer out of any remaining applicable Limit of Liability until the exhaustion of the applicable Limit of Liability.

## VI. RETENTION

Solely with respect to all **Liability Coverage Parts**:

**(A)** The Insurer shall pay **Loss** in excess of the Retention applicable to each **Claim** as specified in ITEM 5 of the Declarations.

**(B)** All Retentions shall be borne by the **Insureds** at their own risk; they shall not be insured.

**(C)** The Retention shall apply to **Defense Costs** covered under this Policy. If, any **Defense Costs** are incurred by the Insurer prior to the **Insured's** complete payment of the Retention, then the **Insureds** shall reimburse the Insurer therefor upon request.

**(D)** If a **Claim** is covered under more than one Coverage Part, the applicable Retention for each Coverage Part shall be applied separately to such **Claim**, provided that the maximum Retention applied to such **Claim** shall not exceed the highest of such applicable Retentions.

**(E)** No Retention shall apply to **Loss** incurred by any **Insured Person** that an **Insured Entity** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of **Financial Insolvency**.

**(F)** If an **Insured Entity** is permitted or required by common or statutory law to indemnify an **Insured Person** for any **Loss**, or to advance **Defense Costs** on their behalf, and does not do so other than because of **Financial Insolvency**, then such **Insured Entity** and the **Named Entity** shall reimburse and hold harmless the Insurer for the Insurer's payment or advancement of such **Loss** up to the amount of the Retention that would have applied if such indemnification had been made.

**(G)** If a **Subsidiary** is unable to indemnify an **Insured Person** for any **Loss**, or to advance **Defense Costs** on their behalf, because of **Financial Insolvency**, then the **Named Entity** shall reimburse and hold harmless the Insurer for the Insurer's payment or advancement of such **Loss** up to the amount of the applicable Retention that would have applied if such indemnification had been made.

## VII.    DEFENSE AND SETTLEMENT

Solely with respect to all **Liability Coverage Parts**:

**(A)** The Insurer shall have the right and duty to defend **Claims** covered under the Policy, even if such **Claim** is groundless, false or fraudulent, provided that:

    **(1)** the **Insureds** give notice to the Insurer in accordance with the applicable **Liability Coverage Parts'** notice provisions; and

    **(2)** such **Claim** does not involve allegations, in whole or in part, of a **Wage and Hour Violation.**

For any **Claim** involving allegations, in whole or in part, of a **Wage and Hour Violation**, it shall be the duty of the **Insureds**, and not the Insurer, to defend such **Claim**.

**(B)** If the Insurer has the duty to defend a **Claim**, the Insurer's duty to defend such **Claim** shall cease upon exhaustion of any applicable Limit of Liability.

Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then the Insurer's duty, if any, to defend any **Claim** shall cease upon exhaustion of the maximum aggregate amount of **Defense Costs** available under Section V. DEFENSE COSTS, and any applicable Limit of Liability.

**(C)** The **Insureds** shall not admit or assume any liability, make any settlement offer or enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** regarding any **Claim** without the prior written consent of the Insurer, such consent not to be unreasonably withheld. The Insurer shall not be liable for any admission, assumption, settlement offer or agreement, stipulation, or **Defense Costs** to which it has not consented.

**(D)** The Insurer shall have the right to associate itself in the defense and settlement of any **Claim** that appears reasonably likely to involve this Policy. The Insurer may make any investigation it deems appropriate in connection with any **Claim**. The Insurer may, with the written consent of the **Insureds**, settle any **Claim** for a monetary amount that the Insurer deems reasonable.

**(E)** Notwithstanding the above, if Defense Outside the Limit of Liability is included in ITEM 5 of the Declarations, then the Insurer may settle any **Claim** for a monetary amount that the Insurer deems reasonable and the consent of the **Insureds** shall not be required to settle a **Claim**.

**(F)** The **Insureds** shall give to the Insurer all information and cooperation as the Insurer may reasonably request.

**(G)** With respect to a covered **Claim** for which the Insurer does not have the duty to defend, the Insurer shall advance **Defense Costs** in accordance with section XI (B) that the Insurer believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined.

## VIII.  MINIMUM STANDARDS

In the event that there is an inconsistency between:

**(A)** the terms and conditions that are required to meet minimum standards of a state's law (pursuant to a state amendatory endorsement attached to this Policy), and

**(B)** any other term or condition of this Policy,

it is understood and agreed that, where permitted by law, the Insurer shall apply those terms and conditions of (A) or (B) above that are more favorable to the **Insured.**

## IX.  EXTENDED REPORTING PERIOD

Solely with respect to all **Liability Coverage Parts:**

**(A)** If any **Liability Coverage Part** is cancelled or non-renewed for any reason other than non-payment of premium, the **Insureds** shall have the right to elect an extension of time to report **Claims** under such **Liability Coverage Part** (the "Extended Reporting Period").

**(B)** To elect the Extended Reporting Period, the **Insureds** shall send a written notice of election of the Extended Reporting Period to the Insurer together with the premium therefor. The right to elect the Extended Reporting Period shall end unless the Insurer receives such notice and premium within sixty (60) days of cancellation or non-renewal. There shall be no right to elect the Extended Reporting Period after such time.

**(C)** The premium for the Extended Reporting Period shall be that percentage specified in ITEM 7 of the Declarations of the sum of the original annual premium plus the annualized amount of any additional premium charged by the Insurer during the **Policy Period**. Such premium shall be deemed fully earned at the inception of the Extended Reporting Period.

**(D)** The Extended Reporting Period shall be for the duration specified in ITEM 7 of the Declarations following the end of the **Policy Period**.

**(E)** Coverage during the Extended Reporting Period shall apply to **Claims** made during the Extended Reporting Period for **Wrongful Acts** occurring prior to the earlier of the end of the **Policy Period** or the time of any transaction described in Section XIV. CHANGES IN EXPOSURE, (C) Takeover of Named Entity. No coverage shall apply for any **Wrongful Act** occurring after such time.

**(F)** There is no separate or additional Limit of Liability for any Extended Reporting Period.

## X.    INTERRELATIONSHIP OF CLAIMS

Solely with respect to all **Liability Coverage Parts:**

All **Claims** based upon, arising from or in any way related to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:

**(A)** any of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period;**

**(B)** notice of any **Wrongful Act** described above was given to the Insurer under this Policy pursuant to Section VIII. NOTICE OF CLAIM (B); or

**(C)** notice of any **Wrongful Act** described above was given under any prior insurance policy.

## XI.    ALLOCATION

Solely with respect to all **Liability Coverage Parts:**

Where **Insureds** who are afforded coverage for a **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:

**(A)** with respect to a covered **Claim** for which the Insurer has the duty to defend:

   **(1)** 100% of the **Insured's Defense Costs** shall be allocated to covered **Loss**; and

   **(2)** All other **Loss** shall be allocated between covered **Loss** and non-covered loss based upon the relative legal exposure of all parties to such matters.

**(B)** with respect to a covered **Claim** for which the Insurer does not have the duty to defend, all **Loss** shall be allocated between covered **Loss** and non-covered loss based upon the relative legal exposure of all parties to such matters.

## XII.    OTHER INSURANCE

If **Loss** arising from any **Claim** is insured under any other valid and collectible policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such

other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

## XIII.  CANCELLATION

**(A)**  The Insurer may cancel this Policy for non-payment of premium by sending not less than 10 days notice to the **Named Entity**. This Policy may not otherwise be cancelled by the Insurer.

**(B)**  Except as provided in Section XIV. CHANGES IN EXPOSURE, (B) Takeover of Named Entity, the **Insureds** may cancel this Policy by sending written notice of cancellation to the Insurer. Such notice shall be effective upon receipt by the Insurer unless a later cancellation time is specified therein.

**(C)**  If the Insurer cancels this Policy, unearned premium shall be calculated on a pro rata basis. If the **Insureds** cancel this Policy, unearned premium shall be calculated at the Insurer's customary short rates. Payment of any unearned premium shall not be a condition precedent to the effectiveness of a cancellation. The Insurer shall make payment of any unearned premium as soon as practicable.

## XIV.  CHANGES IN EXPOSURE

Solely with respect to all **Liability Coverage Parts:**

### (A)  Acquisitions or Created Subsidiaries

If, before or during the **Policy Period**, any **Insured Entity** acquires or creates a **Subsidiary,** then such acquired or created entity and its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, shall be **Insureds** to the extent such entities and persons would otherwise qualify as **Insureds** under the **Liability Coverage Parts**, but only for **Wrongful Acts** occurring after such acquisition or creation. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before such acquisition or creation, or for any **Interrelated Wrongful Acts** thereto.

However, if the fair value of the assets of any such acquired or created entity exceed 25% of the total assets of the **Named Entity** as reflected in its most recent consolidated financial statements prior to such acquisition or creation, then, as a condition precedent to coverage hereunder, the **Insureds** shall give the Insurer written notice and full, written details of the acquisition or creation as soon as practicable (but, in all cases, within ninety (90) days of such acquisition or creation). There shall be no coverage under any renewal or replacement of this Policy for any such new **Subsidiary** and its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, unless the **Insureds** comply with the terms of this provision.

### (B)  Mergers

If, before or during the **Policy Period**, any **Insured Entity** merges with another entity such that the **Insured Entity** is the surviving entity, then such merged entity and its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, shall be **Insureds** to the extent such entities and persons would otherwise qualify as **Insureds** under the **Liability Coverage Parts**, but only for **Wrongful Acts** occurring after such merger. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before such merger or for any **Interrelated Wrongful Acts** thereto.

However, if the fair value of the assets of any newly merged entity exceed 25% of the total assets of the **Named Entity** as reflected in its most recent consolidated financial statements prior to such merger, then, as a condition precedent to coverage hereunder, the **Insureds** shall give the Insurer written notice and full, written details of the merger as soon as practicable (but, in all cases, within ninety (90) days of such merger). There shall be no coverage under any renewal or replacement of this Policy for any newly merged entity or any of its subsidiaries, and any natural persons that would qualify as **Insured Persons** thereof, unless the **Insureds** comply with the terms of this provision.

### (C)  Takeover of Named Entity

If, before or during the **Policy Period**:

**(1)** the **Named Entity** merges into or consolidates with another entity such that the **Named Entity** is not the surviving entity; or

**(2)** more than 50% of the securities representing the right to vote for the **Named Entity's** board of directors or managers is acquired by another person or entity, group of persons or entities, or persons and entities acting in concert,

then coverage shall continue under the **Liability Coverage Parts**, but only for **Wrongful Acts** occurring before any such transaction. No coverage shall be available for any **Wrongful Act** occurring after such transaction. Upon such transaction, this Policy shall not be cancelled and the entire premium for this Policy shall be deemed fully earned. The Insured shall give the Insurer written notice and full, written details of such transaction as soon as practicable (but, in all cases, within ninety (90) days of such transaction). If any transaction described herein occurs, then the Insurer will not be obligated to offer any renewal or replacement of this Policy.

**(D) Loss of Subsidiary Status**

If, before or during the **Policy Period**, any entity ceases to be a **Subsidiary**, then coverage shall be available under the **Liability Coverage Parts** for such **Subsidiary** and its **Insured Persons**, but only for a **Wrongful Act** of such **Insureds** occurring before such transaction. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring after such transaction.

## XV.  SUBROGATION

**(A)** The Insurer shall be subrogated to all of the **Insureds'** rights of recovery regarding any payment of **Loss** by the Insurer under this Policy. The **Insureds** shall execute all papers required and do everything necessary to secure and preserve such rights, including the execution of any documents necessary to enable the Insurer to effectively bring suit in the name of the **Insureds**. The **Insureds** shall do nothing to prejudice the Insurer's position or any potential or actual rights of recovery.

**(B)** Solely with respect to all **Liability Coverage Parts,** the Insurer shall not exercise its rights of subrogation against an **Insured Person** under this Policy unless such **Insured Person** has:

**(1)** obtained any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled, or

**(2)** committed a criminal or deliberately fraudulent act or omission or any willful violation of law,

if a judgment or other final adjudication establishes such personal profit, remuneration, advantage, act, omission, or violation.

## XVI.  APPLICATION

**(A)** The **Insureds** represent that the declarations and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the **Application**.

**(B)** If the **Application** contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by the Insurer:

**(1)** For the purpose of determining coverage under all Coverage Parts other than the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for any **Insureds** who knew on the Inception Date of this Policy of the facts that were so misrepresented, provided that:

**(a)** knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

**(b)** knowledge possessed by any chief executive officer, general counsel, chief financial officer, human resources director or any position equivalent to the foregoing of the **Named Entity**, or anyone signing the **Application,** shall be imputed to all **Insured Entities**. No other person's knowledge shall be imputed to an **Insured Entity**.

**(2)** For the purpose of determining coverage under the Directors, Officers and Entity Liability Coverage Part, no coverage shall be afforded under this Policy for:

**(a)** any **Insured Persons,** under Insuring Agreement (A), who knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**, provided, however, that knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**. This shall be the Insurer's sole remedy under this Insuring Agreement (A). Under no circumstances shall the Insurer be entitled to rescind this Insuring Agreement (A).

**(b)** an **Insured Entity**, under Insuring Agreement (B), to the extent it indemnifies any **Insured Person** referenced in subparagraph (2)(a), above, and

**(c)** an **Insured Entity**, under Insuring Agreements (C) and (D), if any chief executive officer, general counsel, chief financial officer or any position equivalent to the foregoing of the **Named Entity**, or anyone signing the **Application,** knew as of the Inception Date of this Policy the facts that were so misrepresented in the **Application**.

## XVII. ACTION AGAINST THE INSURER

**(A)** Solely with respect to all **Liability Coverage Parts:**

**(1)** No action shall be taken against the Insurer unless there shall have been full compliance with all the terms and conditions of this Policy.

**(2)** No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** nor shall the Insurer be impleaded by the **Insureds** in any such **Claim**.

**(B)** Solely with respect to the **Crime Coverage Part**:

**(1)** No legal action shall be taken against the Insurer involving loss unless the **Insured** has complied with all the terms of this Policy; and

**(2)** No legal action shall be taken against the Insurer involving loss until ninety (90) days after the **Insured** has filed proof of loss with us; and

**(3)** No legal action shall be taken against the Insurer involving loss unless such action is brought within two (2) years from the date that the **Insured** discovers such loss.

**(C)** Solely with respect to the **Kidnap And Ransom/Extortion Coverage Part**:

No suit, action or proceeding for recovery of any claim under this Policy shall be sustainable in any court of law, equity or other tribunal unless all the requirements of this Policy shall have been complied with and the same be commenced within twenty-four (24) months after a claim for actual loss or expenses has been reported to the Insurer by the **Insured**.

## XVIII. ASSIGNMENT

Assignment of interest under this Policy shall not bind the Insurer without its consent as specified in a written endorsement issued by the Insurer to form a part of this Policy.

## XIX. BANKRUPTCY OR INSOLVENCY

Bankruptcy or insolvency of any **Insureds** shall not relieve the Insurer of any of its obligations under this Policy.

## XX.   AUTHORIZATION OF NAMED ENTITY

The **Named Entity** shall act on behalf of all **Insureds** with respect to all matters under this Policy, including, without limitation, giving and receiving of notices regarding **Claims**, cancellation, election of the Extended Reporting Period, payment of premiums, receipt of any return premiums, and acceptance of any endorsements to this Policy.

## XXI.   CHANGES

This Policy shall not be changed or modified except in a written endorsement issued by the Insurer to form a part of this Policy.

## XXII.   ENTIRE AGREEMENT

This Policy, including the Declarations, Common Terms and Conditions, included Coverage Part(s), **Application** and any written endorsements attached hereto, constitute the entire agreement between the **Insureds** and the Insurer relating to this insurance.

## XXIII.   NOTICE ADDRESSES

**(A)** All notices to the **Insureds** shall be sent to the **Named Entity** at the address specified in ITEM 1 of the Declarations.

**(B)** All notices to the Insurer shall be sent to the address specified in ITEM 9 of the Declarations. Any such notice shall be effective upon receipt by the Insurer at such address.

## XXIV.   HEADINGS

The headings of the various sections of this Policy are intended for reference only and shall not be part of the terms and conditions of coverage.

## XXV.   REFERENCES TO LAWS

**(A)** Wherever this Policy mentions any law, including, without limitation, any statute, Act or Code of the U.S., such mention shall be deemed to include all amendments of, and all rules or regulations promulgated under, such law.

**(B)** Wherever this Policy mentions any law or laws, including, without limitation, any statute, Act or Code of the U.S., and such mention is followed by the phrase "or any similar law", such phrase shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, statutes and any rules or regulations promulgated under such statutes as well as common law.

## XXVI.   COVERAGE TERRITORY

Coverage under this Policy applies worldwide.



IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

## TWIN CITY FIRE INSURANCE COMPANY
HOME OFFICE - INDIANAPOLIS, INDIANA
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Terence Shields, Secretary

André A. Napoli, President

RN 00 N026 00 0593
ILBP 83 01 05 89 RN
00 KB 0282521-14          1/01/14

# DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART

## I. INSURING AGREEMENTS

### (A) Insured Person Liability

The Insurer shall pay **Loss** on behalf of the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**, except for **Loss** that an **Insured Entity** pays to or on behalf of the **Insured Persons** as indemnification.

### (B) Corporate Reimbursement

The Insurer shall pay **Loss** on behalf of an **Insured Entity** that such **Insured Entity** has, to the extent permitted or required by law, indemnified the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insured Persons**.

### (C) Entity Liability (Elective)

If Entity Liability Coverage is included in ITEM 5 of the Declarations, the Insurer shall pay **Loss** on behalf of an **Insured Entity** resulting from an **Entity Claim** first made against such **Insured Entity** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by an **Insured Entity.**

This Insuring Agreement shall be subject to the Entity Liability Coverage Retention and Prior or Pending Date in ITEM 5 of the Declarations.

### (D) Derivative Demands

The Insurer shall pay **Investigation Costs** on behalf of an **Insured Entity** that such **Insured Entity** incurs resulting from a **Derivative Demand** first made during the **Policy Period** or Extended Reporting Period, if applicable.

This Insuring Agreement shall be subject to a Sub-limit of Liability of $500,000. Such Sub-limit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sub-limit of Liability shall be part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**. No Retention shall apply to this Insuring Agreement.

## II. DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings specified below:

- **"Claim"** means any:

    **(1) Insured Person Claim**;

    **(2) Entity Claim**;

    **(3) Derivative Demand.**

- **"Damages"** means the amounts, other than **Defense Costs**, that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including:

    **(1)** compensatory damages;

**(2)** settlement amounts;

**(3)** pre- and post-judgment interest;

**(4)** costs awarded pursuant to judgments;

**(5)** regarding Insuring Agreement (D), **Investigation Costs;**

**(6)** punitive and exemplary damages;

**(7)** the multiple portion of any multiplied damage award; or

**(8)** where permissible by law, and notwithstanding sub-paragraph (a) below, civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act (15 U.S.C. §§ 78dd-2(g)(2)(B)).

However, **Damages** shall not include:

**(a)** taxes, fines or penalties imposed by law, including, without limitation, **Data Privacy Regulatory Expenses**;

**(b)** non-monetary relief;

**(c)** any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive and exemplary damages, or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages; or

**(d)** **Notification and Credit Monitoring Expenses**.

- **"Data Privacy Event"** means any **Insured Entity's** negligent and improper dissemination of **Nonpublic Personal Information**.
- **"Data Privacy Laws"** means any U.S. federal, state, territorial and local statutes and regulations governing the confidentiality, control and use of **Nonpublic Personal Information** including but not limited to:

**(1)** Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ("HIPAA");

**(2)** Gramm-Leach-Bliley of 1999 ("G-L-B"), also known as the Financial Services Modernization Act of 1999;

**(3)** State privacy protection laws, including but not limited to the California Database Protection Act of 2003 (Cal. SB 1386) and Cal.Civ.Code § 1798.82, that require commercial internet sites or on-line services that collect personal information or medical information (as defined by such laws or acts) to post privacy policies and adopt specific privacy controls or to notify those impacted by identity or data thief, abuse or misuse;

**(4)** Federal and state consumer credit reporting laws, including but not limited to the Federal Fair Credit Reporting Act (FCRA) and the California Consumer Credit Reporting Agencies Act (CCCRAA); or

**(5)** The Fair and Accurate Credit Transaction Act of 2003 (FACTA).

However, **Data Privacy Laws** shall not include any foreign law, regulation or statute.

- **"Data Privacy Regulatory Expenses"** means fines or penalties incurred by an **Insured Entity** and assessed pursuant to a **Data Privacy Laws** in a **Data Privacy Regulatory Proceeding**.
- **"Data Privacy Regulatory Proceeding"** means a civil, formal administrative or formal regulatory proceeding against an **Insured** by a U.S. federal, state or local governmental authority alleging violation of any **Data Privacy Laws**.
- **"Derivative Action"** means any civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** made on behalf of, or in the name or right of, an **Insured Entity** by any security holders of such **Insured Entity**, in their capacity as such, if such proceeding is made without the assistance, participation or solicitation of any **Manager**.

- **"Derivative Demand"** means any written demand by any security holders of an **Insured Entity**, in their capacity as such, upon the board of directors or managers of such **Insured Entity** to bring a civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** if such demand is made without the assistance, participation or solicitation of any **Manager**. A **Derivative Demand** shall be deemed commenced by the receipt of such demand.

- **"Entity Claim"** means any:

  **(1)** written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand;

  **(2)** civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

  **(3)** criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document;

  against an **Insured Entity**.

  **Entity Claim** also means a written request to an **Insured Entity** to toll or waive a statute of limitations regarding a potential **Entity Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

- **"Insured Person"** means any:

  **(1)** **Manager**; or

  **(2)** **Employee**.

- **"Insured Person Claim"** means any:

  **(1)** written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand against an **Insured Person**;

  **(2)** civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading against an **Insured Person**;

  **(3)** criminal proceeding commenced by the return of an indictment, or formal administrative or regulatory proceeding commenced by the filing of a notice of charges, or similar document against an **Insured Person**; or

  **(4)** formal civil, criminal, administrative or regulatory investigation of an **Insured Person** in which such **Insured Person** is being investigated pursuant to a Wells Notice, target letter (within the meaning of Title 9, §11.151 of the U.S. Attorney's Manual), subpoena or similar document, as someone against whom a proceeding as set forth above may be brought.

  **Insured Person Claim** also means a written request to an **Insured Person** to toll or waive a statute of limitations regarding a potential **Insured Person Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

  Solely with regard to coverage provided under Insuring Agreement A, "**Insured Person Claim**" also means the service of a subpoena or other similar written request upon an **Insured Person** requiring the **Insured Person** to provide testimony or documents in connection with a covered **Claim**. However, in such situation the Insurer shall pay the **Defense Costs** which are incurred solely by the **Insured Person** who receives such subpoena or written request.

- **"Insured(s)"** means any:

    **(1)** **Insured Entity**; or

    **(2)** **Insured Person**.

- "**Investigation Costs**" means reasonable and necessary expenses incurred in the investigation and evaluation of a **Derivative Demand** by an **Insured Entity**, including its board of directors, board of managers, or any committee thereof, provided that **Investigation Costs** shall not include salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds.**

- "**Nonpublic Personal Information**" means a natural person's first name and last name in combination with any one or more of the following:

    **(1)** social security number;

    **(2)** medical or healthcare information or data;

    **(3)** drivers license number or state identification number; or

    **(4)** financial account information that would permit access to that individual's financial account.

- "**Notice Manager**" means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel, risk manager or any equivalent position to the foregoing, of an **Insured Entity**.

- "**Notification and Credit Monitoring Expenses**" means the amount of reasonable and necessary expenses incurred by the **Insured Entity:**

    **(1)** to notify its customers or clients of a **Data Privacy Event** to comply with **Notification Laws;**

    **(2)** for credit monitoring services offered by the **Insured Entity** to individuals after a **Data Privacy Event** to comply with **Notification Laws**; or

    **(3)** to provide courtesy notifications to individuals when such notifications are not mandated by **Notification Laws** but are reasonably necessary to preserve the reputation and good name of the **Insured Entity**.

- "**Notification Laws**" means any U.S. statute or regulation that, at the time of a **Data Privacy Event**, requires an **Insured Entity** storing **Nonpublic Personal Information** on a computer system to provide notice to specified individuals of any actual or potential **Data Privacy Event**. However, **Notification Laws** shall not include any foreign law, regulation or statute.

- "**Outside Capacity**" means service by an **Insured Person** as a director, officer, trustee, regent, governor or equivalent executive of an **Outside Entity** with the knowledge and consent of or at the request of an **Insured Entity**.

- "**Outside Entity**" means any:

    **(1)** not-for-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986,

    **(2)** entity organized for a religious or charitable purpose under any not-for-profit statute, or

    **(3)** entity listed as an **Outside Entity** in a written endorsement issued by the Insurer to form a part of this Policy,

    that is not an **Insured Entity**.

- "**Sarbanes-Oxley Whistle-blowing**" means the lawful act of a **Manager**, in which such Manager provides information, causes information to be provided, or otherwise assists in an investigation regarding any conduct which the **Manager** reasonably believes constitutes a violation of:

(1) any rule or regulation of the Securities and Exchange Commission, or

(2) any provision of Federal, state or foreign law relating to fraud against shareholders, when the information or assistance is provided to, or the investigation is conducted by:

    (a) a Federal, state or foreign regulatory or law enforcement agency;

    (b) any Member of Congress or any committee of Congress; or

    (c) a person with supervisory authority over the **Manager** (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

- **"Wrongful Act"** means any actual or alleged:

  (1) error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed by an **Insured Person** in their capacity as such or in their **Outside Capacity,** or, with regard to Insuring Agreement (C) an **Insured Entity**; or

  (2) matter claimed against an **Insured Person,** solely by reason of their serving in such capacity, including service in an **Outside Capacity.**

## III. COVERAGE EXTENSIONS

### (A) OUTSIDE DIRECTORSHIP LIABILITY

Subject to the terms and conditions of this Policy and **Liability Coverage Part**, coverage is afforded for **Loss** resulting from any **Insured Person Claim** against an **Insured Person** for a **Wrongful Act** in an **Outside Capacity**. Such coverage shall be specifically excess of any indemnity and insurance available from or provided by the **Outside Entity**. Payment by the Insurer or any **Affiliate** under any other insurance policy as a result of such **Claim** shall reduce, by the amount of such payment, the Insurer's Limit of Liability available under this Policy for such **Claim**.

### (B) DATA PRIVACY EVENT EXPENSE COVERAGES

If the **Insured Entity** has a **Data Privacy Event** which first occurs during the **Policy Period** and, as conditions precedent, (i) notifies the Insurer in writing of such **Data Privacy Event** within 30 days of its first occurrence and (ii) at all times endeavors to use its best efforts to mitigate the effect and duration of such **Data Privacy Event**, then, subject to the Insurer's prior written consent, such consent not to be unreasonably withheld, the Insurer shall reimburse the **Insured Entity** for **Data Privacy Regulatory Expenses** and **Notification and Credit Monitoring Expenses** resulting from such **Data Privacy Event**, subject to the following additional terms and conditions:

(1) All **Data Privacy Events** that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes are deemed one **Data Privacy Event** first occurring on the date of the first such dissemination of **Nonpublic Personal Information.**

(2) All exclusions applicable to **Loss** under this **Liability Coverage Part**, other than exclusion V.(A)(7), also apply to any **Data Privacy Regulatory Expenses** and **Notification and Credit Monitoring Expenses.**

(3) Coverage provided by this extension shall be subject to an aggregate Sub-limit of $50,000. Such Sub-limit shall be the maximum aggregate amount that the Insurer shall pay under this **Liability Coverage Part** for all **Data Privacy Regulatory Expenses** and **Notification and Credit Monitoring Expenses** from all **Data Privacy Events**. Such sub-limit shall be part of, and not in addition to, the Aggregate Limit of Liability applicable to this **Liability Coverage Part**.

(4) No retention applies to the coverage provided by this extension.

© 2012, The Hartford

## IV.  EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

The Insurer shall not pay **Loss**:

**(A)** for bodily injury, sickness, disease, emotional distress, mental anguish, or death of any person, or damage to or destruction of any tangible property, including loss of use or diminution of value thereof;

**(B)** in connection with any **Claim** based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable Prior or Pending Date in ITEM 5 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding;

**(C)** in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance, situation or **Wrongful Act** that, before the Inception Date in ITEM 3 of the Declarations, was the subject of any notice given under any other directors and officers, management liability, or similar insurance policy;

**(D)** in connection with any **Claim** based upon, arising from, or in any way related to any:

    **(1)** actual or alleged discharge, dispersal, release, or escape of **Pollutants**, any threat of such discharge, dispersal, release or escape; or

    **(2)** direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

provided, however, that this exclusion shall not apply to **Loss** otherwise covered under Insuring Agreement A or to the portion of **Loss** directly resulting from: (i) a civil proceeding brought by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**; or (ii) a **Derivative Action** or a **Derivative Demand**.

**(E)** in connection with any **Claim** based upon, arising from, or in any way related to any:

    **(1)** claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits or social security benefits;

    **(2)** actual or alleged violation of the Equal Pay Act, Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, or any similar law; or

    **(3)** any **Wage and Hour Violation;**

provided, however, that this exclusion shall not apply to the portion of **Loss** directly resulting from: (i) a civil proceeding brought by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**; or (ii) a **Derivative Action** or a **Derivative Demand.**

**(F)** in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:

    **(1)** malfunction of any product, or failure of any product to perform in any manner as a result of any deficiency, inadequacy, unfitness, defect or dangerous condition in any product or in its design or manufacture; or

    **(2)** rendering of, or failure to render, any services for or on behalf of others for a fee, including, without limitation, services performed by or on behalf of the **Insureds** for or on behalf of a customer or client;

provided, however, that this exclusion shall not apply to the portion of **Loss** directly resulting from: (i) a civil proceeding brought by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**; or (ii) a **Derivative Action** or a **Derivative Demand.**

**(G)** for any actual or alleged violation of **ERISA** or any similar law;

**(H)** in connection with any **Claim** brought or maintained by or on behalf of any **Insureds** (in any capacity) or any security holder of an **Insured Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from:

**(1)** a civil proceeding by a security holder of an **Insured Entity**, in their capacity as such, that is brought and maintained without the solicitation, assistance, or active participation of any **Insured Entity** or **Manager**; or

**(2)** a **Derivative Action** or a **Derivative Demand**;

Note: **Sarbanes-Oxley Whistle-blowing** alone shall not be deemed solicitation, assistance or participation for purposes of paragraphs (1) and (2) above.

**(3)** an **Insured Person Claim** by or on behalf of an **Employee** who is not a past or present **Manager** if such **Claim** is made without the assistance, participation or solicitation of any **Manager**;

**(4)** an **Insured Person Claim** by or on behalf of a **Manager** for wrongful termination of such **Manager**;

**(5)** a civil proceeding by or on behalf of a former **Manager** who has not served in such capacity for at least one year prior to such **Claim** being made, provided that such **Claim** is made without the assistance, participation or solicitation of any current **Manager** or any former **Manager** who has served in such capacity during the one year prior to such **Claim** being made;

**(6)** a civil proceeding by or on behalf of an **Insured Person** for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

**(7)** an **Insured Person Claim** brought and maintained in a jurisdiction outside the United States of America, Canada, Australia or any other common law country (including territories thereof) by a **Manager** due to a pleading requirement of such jurisdiction; or

**(8)** a civil proceeding by any bankruptcy trustee, examiner, receiver, liquidator, creditor(s) committee of the **Insured Entity** or rehabilitator (or any assignee thereof) after such bankruptcy trustee, examiner, receiver, liquidator or rehabilitator has been appointed;

**(I)** of an **Insured Person** based upon, arising from, or in any way related to such **Insured Person's** service, at any time, as a director, officer, trustee, regent, governor or equivalent executive or as an employee of any entity other than an **Insured Entity** even if such service is at the direction or request of such **Insured Entity**, provided that this exclusion shall not apply to coverage afforded under Section III. of this **Liability Coverage Part** for a **Claim** for a **Wrongful Act** by an **Insured Person** while serving in an **Outside Capacity**;

**(J)** in connection with any **Claim** by or on behalf of any **Outside Entity** upon which an **Insured Person** is serving or has served in an **Outside Capacity**, or any past or present director, officer, trustee, regent, governor or equivalent executive of such **Outside Entity**, provided that this exclusion shall not apply to the portion of **Loss** directly resulting from:

**(1)** a derivative action made on behalf of an **Outside Entity** by any persons who are not:

**(a)** **Insured Persons**; or

**(b)** directors, officers, trustees, regents, governors or equivalent executives of the **Outside Entity**,

and who make such **Claim** without the solicitation, assistance or participation of any such persons; or

**(2)** a civil proceeding brought and maintained by any:

**(a)** **Insured Persons**; or

**(b)** directors, officers, trustees, regents, governors or equivalent executives of an **Outside Entity**,

for contribution or indemnification if such **Claim** directly results from a **Claim** that is otherwise covered under this **Liability Coverage Part**;

**(K)** in connection with any **Claim** based upon, arising from, or in any way related to any public listing or offering of securities of an **Insured Entity** or the purchase or sale of such securities subsequent to such public listing or offering; provided that this exclusion shall not apply to that portion of **Loss** directly resulting from:

**(1)** a **Wrongful Act** in any private placement of an **Insured Entity's** securities exempted from the registration requirements of the Securities Act of 1933, including such securities exempted pursuant to Title III - CROWDFUNDING of the Jumpstart Our Business Startups Act ("JOBS Act");

**(2)** a civil proceeding brought and maintained by any security holders of an **Insured Entity** for the failure of the **Insured Entity** to undertake or complete an initial public offering or sale of securities of such **Insured Entity**; or

**(3)** a **Wrongful Act** relating to the **Insured Entity's** preparation for any public offering, including any presentations made by the **Insured Entity** and its **Managers** via any medium in connection with such offering, if such public offering does not occur.

**(L)** of an **Insured,** based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which such **Insured** is not legally entitled if a judgment or other non-appealable final adjudication establishes that such a gain did occur; or

**(M)** of an **Insured**, based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such Insured if a judgment or other non-appealable final adjudication establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to **Insured Entities** under Insuring Agreement (C), if elected, if a past or present chief executive officer, chief financial officer, general counsel or any position equivalent to the foregoing of the **Named Entity** committed such an act, omission or willful violation.

Regarding exclusions (L) and (M) above: The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

## V.  EXCLUSIONS APPLICABLE TO INSURING AGREEMENT (C)

**(A)** The Insurer shall not pay **Loss** under Insuring Agreement (C) in connection with any **Claim** based upon, arising from, or in any way related to any actual or alleged:

**(1)** liability under any contract or agreement, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement;

**(2)** employment-related **Wrongful Act**;

**(3)** discrimination or sexual harassment;

**(4)** false arrest or imprisonment, abuse of process, malicious prosecution, defamation (including libel and slander), invasion of privacy, trespass, nuisance or wrongful entry or eviction, assault, battery or loss of consortium;

**(5)** price fixing, restraint of trade, monopolization, or violation of the Sherman Antitrust Act, Clayton Act, or any similar law regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities; provided, however, this exclusion shall not apply to **Defense Costs** incurred to defend such allegations up to a maximum of the lesser of (i) the remaining amount of the applicable limit of liability listed on the Declarations or (ii) $1,000,000;

In the event that the Defense Outside the Limit of Liability option in ITEM 5 of the Declarations is selected, **Defense Costs** for all such **Claims** shall be limited to the lesser of (i)the remaining **Defense Costs** available pursuant to Section V.(B) of the COMMON TERMS AND CONDITIONS of this Policy or (ii) $1,000,000.

**(6)** infringement, dilution or misappropriation of copyright, patent, trademark, trade name, trade dress, service mark, trade secrets, or other intellectual property; provided, however that this exclusion shall not apply to the portion of **Loss** directly resulting from:

    **(a)** a civil proceeding brought and maintained by a security holder(s) of an **Insured Entity,** in their capacity as such; or

    **(b)** a **Derivative Action** or a **Derivative Demand**; or

  **(7)** unfair trade practices or any violation of the Federal Trade Commission Act or any similar law.

**(B)** The Insurer shall not pay **Loss** under Insuring Agreement C for any **Claim** based upon, arising from, or in any way related to the actual or alleged payment by an **Insured Entity** of inadequate consideration in connection with an **Insured Entity's** purchase of securities issued by any **Insured Entity;** provided, however, that this exclusion shall not apply to the portion of **Loss** representing **Defense Costs** incurred to defend such allegations.

## VI.  ADDITIONAL LIMIT OF LIABILITY FOR CLAIMS AGAINST MANAGERS

Subject to the terms and conditions of this Policy and **Liability Coverage Part,** an additional Limit of Liability of $1,000,000 shall be available for **Loss** resulting from **Insured Person Claims** against **Managers,** provided that:

**(A)** such **Claims** are covered under Insuring Agreement A;

**(B)** such additional Limit of Liability shall be excess of all other insurance available to pay **Loss** for such **Claims**, including, without limitation, this Policy and insurance written specifically as excess over this Policy, which such insurance must be exhausted prior to this additional Limit of Liability becoming available to pay **Loss**; and

**(C)** such additional Limit of Liability shall be available for the second covered **Claim** made during the **Policy Period** and all subsequent **Claims**. This Limit of Liability shall not be provided for the first **Claim** made for which coverage is provided under this Policy. The first **Claim** made for which coverage is provided under this Policy shall be determined by the chronological time such **Claim** was made regardless of when coverage is acknowledged by the Insurer for such **Claim**.

The additional Limit of Liability described above shall be the maximum aggregate amount that the Insurer shall pay for all **Loss** from all **Claims** covered under this provision.

## VII.  SECURITIES OFFERINGS

If any public offering of an **Insured Entity's** securities occurs during the **Policy Period** that is not exempt from registration under the Securities Act of 1933, the Insurer shall furnish the **Insureds** with a quote for insurance coverage of such offering, provided that:

**(A)** at least 30 days prior to the effective date of such offering, the **Insureds** shall give the Insurer written notice of such offering together with all information requested by the Insurer;

**(B)** such quote shall be on such terms and conditions, including any additional premium, as the Insurer, in its absolute discretion, chooses;

**(C)** any coverage provided shall be on such forms as are in use by the Insurer for public companies at the time of such offering; and

**(D)** if the **Insureds** choose to cancel this Policy to accept a coverage form offered in such quote, unearned premium for this Policy shall be calculated on a pro rata basis.

## VIII.  ORDER OF LOSS PAYMENTS

**(A)** If **Loss** is incurred that is acknowledged by the Insurer to be covered under this **Liability Coverage Part,** except that such **Loss** exceeds the remaining available Limit of Liability for this **Liability Coverage Part**, the Insurer shall first pay **Loss** covered under Insuring Agreement A prior to paying **Loss** under any other Insuring Agreements.

(B) If **Loss** is incurred that is acknowledged by the Insurer to be covered under any Insuring Agreement other than Insuring Agreement A, the **Named Entity** shall have the right to direct the Insurer to delay payment of such **Loss** until such time as the **Named Entity** specifies. Any such direction by the **Named Entity** to delay or make payment of **Loss** shall be by written notice to the Insurer. Any such delayed payment of **Loss** shall be available to the Insurer to pay **Loss** covered under Insuring Agreement A. Any payment of **Loss** under Insuring Agreement A out of funds withheld by the Insurer pursuant to this provision shall terminate the Insurer's liability to make a delayed payment of **Loss** under any Insuring Agreement other than A by the amount of the payment under Insuring Agreement A. No interest shall be due regarding any delayed payment of **Loss**. Nothing in this provision shall increase the Insurer's Limit of Liability applicable to this **Liability Coverage Part**.

## IX. RETENTION WAIVER

No Retention shall apply to **Defense Costs** incurred in connection with a **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

(A) final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

(B) complete and final settlement with prejudice;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

## X. NOTICE OF CLAIM

(A) As a condition precedent to coverage under this **Liability Coverage Part**, the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than:

    (1) if this Policy expires or is otherwise terminated without being renewed with the Insurer, ninety (90) days after the effective date of said expiration or termination; or

    (2) the expiration of the Extended Reporting Period, if applicable;

provided, however, that if the Policy is cancelled for non payment of premium, the **Insured** will give the Insurer written notice of such **Claim** prior to the effective date of cancellation.

(B) If during the **Policy Period** the **Insureds** become aware of a **Wrongful Act** that may reasonably be expected to give rise to a **Claim**, and if written notice of such **Wrongful Act** is given to the Insurer during the **Policy Period**, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently arising from such **Wrongful Act** shall be deemed to be a **Claim** first made during the **Policy Period** on the date that the Insurer receives the above notice.

# EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

## I.  INSURING AGREEMENTS

### (A)  Employment Practices Liability

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for an **Employment Practices Wrongful Act** by the **Insureds**.

### (B)  Third Party Liability (Elective)

If Third Party Liability Coverage is included in ITEM 5 of the Declarations, the Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Third Party Claim** first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Third Party Wrongful Act** by the **Insureds.**

This Insuring Agreement shall be subject to the Third Party Liability Coverage Sub-limit of Liability, Retention, and Prior or Pending Date in ITEM 5 of the Declarations. Such Sub-limit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sub-limit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**.

## II.  DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings specified below:

- **"Benefits"** means perquisites, fringe benefits, deferred compensation, severance pay and any other form of compensation (other than salaries, wages, or bonuses as a component of a front or back pay award).
- **"Claim"** means any:

    **(1) Employment Practices Claim**; or

    **(2) Third Party Claim.**

- **"Damages"** means the amounts, other than **Defense Costs**, that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including:

    **(1)** compensatory damages, including front pay and back pay;

    **(2)** settlement amounts;

    **(3)** pre- and post-judgment interest;

    **(4)** costs awarded pursuant to judgments;

    **(5)** punitive and exemplary damages;

    **(6)** the multiple portion of any multiplied damage award; or

    **(7)** liquidated damages under the Age Discrimination in Employment Act.

    However, **Damages** shall not include:

    **(a)** taxes, fines or penalties imposed by law;

**(b)** non-monetary relief;

**(c)** **Benefits;**

**(d)** future compensation for any person hired, promoted, or reinstated pursuant to a judgment, settlement, order or other resolution of a **Claim**;

**(e)** **Stock Benefits**;

**(f)** costs associated with providing any accommodations required by the Americans with Disabilities Act or any similar law; or

**(g)** any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive and exemplary damages, or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

- **"Employee Data Privacy Wrongful Act"** means:

  **(1)** the failure to prevent any unauthorized access to or use of data containing **Private Employment Information** of any **Employee** or applicant for employment with the **Insured Entity**; or

  **(2)** the failure to notify any **Employee** or applicant for employment with the **Insured Entity** of any actual or potential unauthorized access to or use of **Private Employment Information** of any **Employee** or applicant for employment with the **Insured Entity**, if such notice was required by state or federal regulation or statute.

- **"Employment Practices Claim"** means any:

  **(1)** written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

  **(2)** civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

  **(3)** formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

  by or on behalf of an **Employee**, an applicant for employment with an **Insured Entity**, or an **Independent Contractor**.

  **Employment Practices Claim** also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the U.S. Office of Federal Contract Compliance Programs.

  **Employment Practices Claim** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Employment Practices Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

  However, **Employment Practices Claim** shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

- **"Employment Practices Wrongful Act"** means:

  **(1)** wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

© 2012, The Hartford

**(2)** sexual or other workplace harassment (including bullying in the workplace), including quid pro quo and hostile work environment;

**(3)** employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

**(4)** **Retaliation**;

**(5)** breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

**(6)** violation of the Family and Medical Leave Act.

**Employment Practices Wrongful Act** also means the following, but only when alleged in addition to or as part of any **Employment Practices Wrongful Act** described above:
However, **Data Privacy Laws** shall not include any foreign law, regulation or statute.

**(a)** employment-related wrongful infliction of mental anguish or emotional distress;

**(b)** failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

**(c)** negligent retention, supervision, hiring or training;

**(d)** employment-related: invasion of privacy, defamation, or misrepresentation; or

**(e)** an **Employee Data Privacy Wrongful Act.**

- **"Independent Contractor"** means any natural person working in the capacity of an independent contractor pursuant to an **Independent Contractor Agreement.**
- **"Independent Contractor Agreement"** means any express contract or agreement between an **Independent Contractor** and an **Insured Entity** specifying the terms of the **Insured Entity's** engagement of such **Independent Contractor.**
- **"Insured Person"** means any:

  **(1)** **Employee**;

  **(2)** **Manager**; or

  **(3)** regarding Insuring Agreement (A), an **Independent Contractor** provided that within 30 days of an **Employment Practices Claim** having been made against such **Independent Contractor** that the **Insured Entity** agrees in writing to indemnify such **Independent Contractor** for any **Loss** arising out of such **Claim**.

- **"Insureds"** means any:

  **(1)** **Insured Entity**; or

  **(2)** **Insured Person.**

- **"Notice Manager"** means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel, risk manager, human resources manager or any equivalent position to the foregoing, of an **Insured Entity**.
- **"Private Employment Information"** means any information regarding an **Employee** or applicant for employment with the **Insured Entity**, which is collected or stored by an **Insured** for the purposes of establishing, maintaining or terminating an employment relationship.
- **"Retaliation"** means adverse treatment of an **Employee** or **Independent Contractor** based upon such person:

**(1)** exercising any rights under law, including, without limitation, rights under any workers compensation laws, the Family and Medical Leave Act, **ERISA**, or the Americans with Disabilities Act;

**(2)** refusing to violate any law;

**(3)** assisting, testifying, or cooperating with a proceeding or investigation regarding alleged violations of law by any **Insured**;

**(4)** disclosing or threatening to disclose alleged violations of law to a superior or to any governmental agency; or

**(5)** filing any "whistle blower" claim against any **Insured** under the federal False Claims Act, the Sarbanes-Oxley Act of 2002, or any similar law.

- **"Stock Benefits"** means any offering, plan or agreement between an **Insured Entity** and any **Employee** that grants stock, stock options or stock appreciation rights in the **Insured Entity** to such person, including, without limitation, restricted stock or any other stock grant. **Stock Benefits** shall not include employee stock ownership plans or employee stock purchase plans.

- **"Third Party"** means any natural person who is a customer, vendor, service provider or other business invitee of an **Insured Entity**. **Third Party** shall not include **Employees**.

- **"Third Party Claim"** means any:

   **(1)** written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand;

   **(2)** civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

   **(3)** formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

   by or on behalf of a **Third Party**.

   **Third Party Claim** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Third Party Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

- **"Third Party Wrongful Act"** means:

   **(1)** discrimination against a **Third Party** based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state or local law; or

   **(2)** sexual harassment or other harassment of a **Third Party**, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature.

- **"Wrongful Act"** means any actual or alleged:

   **(1)** **Employment Practices Wrongful Act**; or

   **(2)** **Third Party Wrongful Act**.

## III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**(A)** The Insurer shall not pay **Loss**:

   **(1)** for bodily injury, sickness, disease, death, false arrest or imprisonment, abuse of process, malicious prosecution, trespass, nuisance or wrongful entry or eviction, or for injury to or destruction of any tangible property including loss of use or diminution of value thereof; provided, however, that this exclusion shall not apply to that portion of

**Loss** that directly results from mental anguish or emotional distress when alleged in connection with an otherwise covered **Employment Practices Wrongful Act**;

(2) for any actual or alleged **Wrongful Act** by **Insured Persons** of any **Subsidiary** in their capacities as such, or by any **Subsidiary**, if such **Wrongful Act** actually or allegedly occurred when such entity was not a **Subsidiary**;

(3) in connection with any **Claim** based upon, arising from, or in any way related to any:

   (a) prior or pending demand, suit, or proceeding against any **Insured** as of; or

   (b) initiated by the Office of Federal Contract Compliance Programs before

the applicable Prior or Pending Date in ITEM 5 of the Declarations, or the same or substantially similar fact, circumstance, or situation underlying or alleged in such demand, suit, proceeding, or audit;

(4) in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance, or situation that, before the inception date in ITEM 3 of the Declarations, was the subject of any notice given under any other employment practices liability policy, management liability policy or other insurance policy which insures **Wrongful Acts** covered under this Policy;

(5) in connection with any **Claim** based upon, arising from, or in any way related to the liability of others assumed by an **Insured** under any contract or agreement; provided, however, this exclusion shall not apply to liability that would have been incurred in the absence of such contract or agreement;

(6) for breach of any **Independent Contractor Agreement**; or

(7) for a lockout, strike, picket line, hiring of replacement workers or similar action in connection with any labor dispute, labor negotiation or collective bargaining agreement.

(B) The Insurer shall not pay **Loss** in connection with any **Claim** based upon, arising from, or in any way related to:

(1) any claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or social security benefits;

(2) any actual or alleged violation of the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, **ERISA**, or any similar law; or

(3) any **Wage and Hour Violation**

Provided, however, that this exclusion (B) shall not apply to that portion of **Loss** that represents a specific amount the **Insureds** become legally obligated to pay solely for a **Wrongful Act** of **Retaliation.**

(C) The Insurer shall not pay **Loss** in connection with any **Claim** based upon, arising from, or in any way related to liability incurred for breach of any oral, written, or implied employment contract; provided, however, that this exclusion shall not apply to liability that would have been incurred in the absence of such contract nor shall it apply to the portion of **Loss** representing **Defense Costs** incurred to defend against such liability.

## IV.  EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENT (B)

Solely with respect to Insuring Agreement (B), the Insurer shall not pay **Loss** in connection with any **Third Party Claim** based upon, arising from or in any way related to any price discrimination or violation of any anti-trust law or any similar law designed to protect competition or prevent unfair trade practices.

## V.  OTHER INSURANCE

(A) The coverage provided under this Policy for any **Employment Practices Claim** shall be primary.

**(B)** Notwithstanding the above, the coverage provided under this Policy for any **Employment Practices Claim** made against a temporary, leased or loaned **Employee** or an **Independent Contractor** shall be excess of the amount of any deductible, retention and limits of liability under any other policy or policies applicable to such **Claim**, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy or policies to this Policy's Policy Number.

## VI.  NOTICE OF CLAIM

**(A)** As a condition precedent to coverage under this **Liability Coverage Part**, the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than:

   **(1)** if this Policy expires or is otherwise terminated without being renewed with the Insurer, ninety (90) days after the effective date of said expiration or termination;

   **(2)** the expiration of the Extended Reporting Period, if applicable;

   provided, however, that if the Policy is cancelled for non payment of premium, the **Insured** will give to the Insurer written notice of such **Claim**, prior to the effective date of cancellation.

**(B)** However, with regard to any **Employment Practices Claim** which is brought as a formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document, as a condition precedent to coverage under this Policy the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than:

   **(1)** if this Policy is renewed, no more than 180 days after a **Notice Manager** becomes aware of such **Claim;** or

   **(2)** if this Policy expires or is otherwise terminated without being renewed with the Insurer, ninety (90) days after the effective date of said expiration or termination; or

   **(3)** the expiration of the Extended Reporting Period, if applicable;

   provided, if the Policy is cancelled for non payment of premium, the **Insured** will give to the Insurer written notice of such **Claim**, prior to the effective date of cancellation.

**(C)** If, during the **Policy Period**, the **Insureds** become aware of a **Wrongful Act** that may reasonably be expected to give rise to a **Claim**, and, if written notice of such **Wrongful Act** is given to the Insurer during the **Policy Period**, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently arising from such **Wrongful Act** shall be deemed to be a **Claim** first made during the **Policy Period** on the date that the Insurer receives the above notice.

## VII.   RETENTION WAIVER

Regarding a **Claim** that is a class action civil proceeding, no Retention shall apply to **Defense Costs** incurred in connection with such **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

**(A)** final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

**(B)** complete and final settlement with prejudice;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

## VIII.    COORDINATION OF COVERAGE

If this **Liability Coverage Part** and either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part are included under this Policy, and a **Claim** is covered under this **Liability Coverage Part** and any such other **Liability Coverage Part**, **Loss** shall be first covered and paid under this **Liability Coverage Part**.

If notice of a **Claim** has been given under either the Directors, Officers and Entity Liability Coverage Part or Fiduciary Liability Coverage Part and a determination is made by the Insurer that such **Claim** would be covered under this **Liability Coverage Part** if notice had been given under this **Liability Coverage Part**, then the **Insureds** shall be deemed to have given notice of such **Claim** under this **Liability Coverage Part** at the same time that notice was given under such other **Liability Coverage Part**.

# FIDUCIARY LIABILITY COVERAGE PART

## I. INSURING AGREEMENTS

### (A) Fiduciary Liability

The Insurer shall pay **Loss** on behalf of the **Insureds** resulting from a **Fiduciary Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insureds** or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible.

### (B) Settlement Programs (Elective)

If Settlement Program Coverage is included in ITEM 5 of the Declarations, the Insurer shall pay **Settlement Fees** on behalf of the **Insureds** resulting from a **Settlement Program** for which a **Settlement Program Notice** is received by the Insurer during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by the **Insureds.**

This Insuring Agreement shall be subject to a Sub-limit of Liability of $100,000. Such a Sub-limit of Liability shall be the maximum aggregate amount that the Insurer shall pay under this Insuring Agreement for all **Loss** from all **Claims** covered under this Insuring Agreement. Such Sub-limit of Liability shall be subject to, part of, and not in addition to, the Limit of Liability applicable to this **Liability Coverage Part**. This Insuring Agreement shall also be subject to the Settlement Program Coverage Retention and Prior or Pending Date in ITEM 5 of the Declarations.

## II. DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings specified below:

- **"Claim"** means any:

  **(1)** **Fiduciary Claim**; or

  **(2)** **Settlement Program Notice**.

- **"Damages"** means the amounts, other than **Defense Costs**, that the **Insureds** are legally liable to pay solely as a result of a **Claim** covered by this **Liability Coverage Part**, including:

  **(1)** compensatory damages;

  **(2)** settlement amounts;

  **(3)** pre- and post-judgment interest;

  **(4)** costs awarded pursuant to judgments;

  **(5)** punitive and exemplary damages; and

  **(6)** the multiple portion of any multiplied damage award.

However, **Damages** shall not include:

  **(a)** taxes, fines or penalties imposed by law; provided, however, the foregoing shall not apply to:

      **(i)** **Settlement Fees**, provided that Settlement Program Coverage is elected;

      **(ii)** civil penalties of:

- up to 5% imposed upon the **Insureds** pursuant to **ERISA** Section 502(i) or up to 20% imposed pursuant to **ERISA** Section 502(l); or
- up to $50,000 imposed upon the **Insureds,** for the failure to provide required **ERISA** plan documents, pursuant to **ERISA** Section 502(c);

(Any such limit shall be a Sub-limit of Liability that shall be part of, and not in addition to, the Aggregate Limit of Liability for this **Liability Coverage Part** shown on the Declarations.)

(iii) civil penalties imposed upon the **Insureds** under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Coverage for such civil penalties referred to in this sub-paragraph (iii) is conditioned upon the following: (x) payment of such **Loss** shall be subject to the Sub-limit of Liability specified in ITEM 5 of the Declarations and (y) such sub-limit of liability shall be part of, and not in addition to, the Aggregate Limit of Liability for this **Liability Coverage Part** shown on the Declarations; or

(iv) where permitted by law the Insurer shall cover **Loss** under this **Liability Coverage Part** for civil penalties imposed under the English Pension Scheme Act of 1993, the English Pension Act of 1995, or the Pensions Act of 2004 and 2008 (all as amended from time to time) by the Pensions Regulator.

**(b)** non-monetary relief; and

**(c)** any other matters uninsurable pursuant to any applicable law; provided, however, that with respect to punitive and exemplary damages or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages.

- **"Employee Stock Ownership Plan"** means any **Insured Plan** that invests more than 10% of its assets in securities of **Insured Entities.**

- **"Fiduciary Claim"** means any:

  **(1)** written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand;

  **(2)** civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading;

  **(3)** criminal proceeding commenced by the return of an indictment; or

  **(4)** formal administrative or regulatory proceeding commenced by the filing or service of a notice of charges, formal investigative order or similar document, including an investigation by the Department of Labor or Pension Benefit Guaranty Corporation.

  **"Fiduciary Claim"** also means a written request to the **Insureds** to toll or waive a statute of limitations regarding a potential **Fiduciary Claim** as described above. Such **Claim** shall be commenced by the receipt of such request.

- **"Insured Person"** means any:

  **(1) Manager;**

  **(2) Employee;** or

  **(3)** natural person who was, is or shall become trustee of an **Insured Plan** while in such person's capacity as a trustee, which shall also include the functional equivalent of a trustee while serving in such a position outside of the U.S.

- **"Insured Plan"** means any past, present, or future:

  **(1)** employee welfare benefit plan or employee pension benefit plan, as defined in **ERISA**, sponsored solely by an **Insured Entity**, or jointly by an **Insured Entity** and a labor organization, for the benefit of **Employees** only;

**(2)** employee benefit plan, including an excess benefit plan, not subject to Title 1 of **ERISA**, sponsored solely by an **Insured Entity** for the benefit of **Employees** only;

**(3)** government-mandated insurance program for unemployment, social security or disability benefits for **Employees** other than workers compensation; or

**(4)** any other plan, fund, or program specifically included as an **Insured Plan** in a written endorsement issued by the Insurer to form a part of this Policy.

Notwithstanding the above, an **Insured Plan** shall not include any:

**(a)** **Employee Stock Ownership Plan**; or

**(b)** any multi-employer plan.

- **"Insured(s)"** means any:

    **(1)** **Insured Entity;**

    **(2)** **Insured Person**; or

    **(3)** **Insured Plan.**

- **"Notice Manager"** means the natural persons in the offices of the chief executive officer, chief financial officer, general counsel, risk manager, human resources manager or any equivalent position to the foregoing, of an **Insured Entity**.
- **"Settlement Fees"** mean any fees, penalties or sanctions imposed by law under a **Settlement Program** that any **Insureds** become legally obligated to pay as a result of a **Wrongful Act**. **Settlement Fees** shall not include costs of corrections, other than fees or penalties.
- **"Settlement Program"** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or any other governmental body that is entered into by an **Insured Entity**.
- **"Settlement Program Notice"** means a prior written notice to the Insurer by any **Insured Entity** of its intent to enter into a **Settlement Program** that includes a detailed description of the **Wrongful Act** for which notice will be given under the **Settlement Program**.
- **"Wrongful Act"** means any actual or alleged:

    **(1)** error, misstatement, misleading statement, act, omission, neglect or breach of duty constituting a violation of any responsibilities, obligations or duties imposed upon fiduciaries of an **Insured Plan** by **ERISA** or any similar law;

    **(2)** breach of the responsibilities, obligations or duties imposed upon an **Insured** by HIPAA in connection with an **Insured Plan**;

    **(3)** error, misstatement, misleading statement, act, omission, neglect or breach of duty in counseling, providing interpretations, handling records, or effecting enrollment, termination or cancellation of **Employees**, participants, or beneficiaries under an **Insured Plan**; or

    **(4)** matter claimed against an **Insured** solely due to such **Insured** acting in the capacity of a fiduciary of an **Insured Plan**.

## III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**(A)** The Insurer shall not pay **Loss**:

**(1)** for bodily injury, sickness, disease, emotional distress, mental anguish, or death of any person, or damage to or destruction of any tangible property, including loss of use or diminution of value thereof;

**(2)** in connection with any **Claim** based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable Prior or Pending Date in ITEM 5 of the Declarations

or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding;

**(3)** in connection with any **Claim** based upon, arising from, or in any way related to any fact, circumstance or situation that, before the Inception Date in ITEM 3 of the Declarations, was the subject of any notice given under any other insurance policy;

**(4)** in connection with any **Claim** based upon, arising from, or in any way related to any:

    **(a)** discharge, dispersal, release, or escape of **Pollutants**, or any threat of such discharge, dispersal, release or escape; or

    **(b)** direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

**(5)** in connection with any **Claim** based upon, arising from, or in any way related to the liability of others assumed under any contract or agreement, provided that this exclusion shall not apply to liability:

    **(a)** that would have been incurred in the absence of such contract or agreement; or

    **(b)** assumed under any agreement or declaration of trust under which any **Insured Plan** was established;

**(6)** in connection with any **Claim** based upon, arising from, or in any way related to any:

    **(a)** claims for unpaid wages (including overtime pay), workers' compensation benefits, unemployment compensation, disability benefits, or

    **(b)** actual or alleged violation of the Equal Pay Act, Worker Adjustment and Retraining Notification Act, or any rule or regulation promulgated thereunder, or similar federal, state, local or common laws, rules or regulations;

    **(c)** a **Wage and Hour Violation.**

**(7)** of an **Insured,** based upon, arising from, or in any way related to the gaining of any personal profit, remuneration or advantage to which such **Insured** is not legally entitled if a judgment or other non-appealable final adjudication establishes that such a gain did occur; or

**(8)** of an **Insured**, based upon, arising from, or in any way related to any criminal or deliberately fraudulent act or omission or any willful violation of law by such Insured if a judgment or other non-appealable final adjudication establishes such an act, omission or violation; provided, however, that this exclusion shall only apply to **Insured Entities** if a past or present chief executive officer, chief financial officer general counsel or any position equivalent to the foregoing of the **Named Entity** committed such an act, omission or willful violation.

Regarding exclusions (7) and (8) above: The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured**.

**(B)** Other than that portion of **Loss** that represents **Defense Costs** incurred to defend the following allegations or demands, the Insurer shall not pay **Loss** for any **Claim**:

**(1)** for the actual or alleged failure to pay benefits pursuant to any **Insured Plan**, provided that this exclusion shall not apply to the extent that:

    **(a)** recovery of such benefits is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Insured Person**; or

    **(b)** a **Claim** made against any **Insured** alleges a loss to an **Insured Plan** and/or to the accounts of such **Insured Plan's** participants by reason of a change in value of the investments held by such **Insured Plan**, regardless of whether the amounts sought in such **Claim** are characterized by plaintiffs or held by a court to be benefits due or damages for breach of fiduciary duty;

(2) based upon, arising from, or in any way related to the actual or alleged failure to fund, or collect contributions owed to, an **Insured Plan**; or

(3) for return or reversion of any contributions or assets to an **Insured Entity** from an **Insured Plan**.

## IV.  WAIVER OF RECOURSE

The Insurer shall have no right of recourse against any **Insureds** for any payment of **Loss** made by the Insurer under this **Liability Coverage Part** because of a **Wrongful Act** by such **Insureds** if the premium for this Policy was paid for by other than an **Insured Plan**.

## V.  CHANGES IN EXPOSURE

(A) This Section shall supplement, and not replace, Common Terms and Conditions Section XIV. Changes in Exposure.

(B) The provisions of Common Terms and Conditions Section XIV. Changes in Exposure (A) Mergers and New Subsidiaries shall also apply to any employee benefit plan of any newly merged or acquired entity and to any trustee of such plan to the extent that such plan and trustee would otherwise qualify as **Insureds** under this Policy. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring before the merger or acquisition of the entity or for any **Interrelated Wrongful Acts** thereto.

(C) The provisions of Common Terms and Conditions Section XIV. Changes in Exposure (C) Loss of Subsidiary Status shall also apply to any **Insured Plan** of a former **Subsidiary** and any trustee of such plan. No coverage shall be available for any **Wrongful Act** of such **Insureds** occurring after an entity ceases to be a **Subsidiary**.

## VI.  TERMINATED PLAN COVERAGE

Subject to the terms and conditions of this Policy and **Liability Coverage Part**, coverage shall be afforded for **Loss** resulting from any **Claim** against the **Insureds** for a **Wrongful Act** involving any **Insured Plan** terminated by an **Insured Entity**, including post-termination **Wrongful Acts**.

## VII.  RETENTION WAIVER

No Retention shall apply to **Defense Costs** incurred in connection with a **Claim**, and the Insurer shall reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Retention otherwise applicable to such **Claim**, if a:

(A) final adjudication with prejudice pursuant to a trial, motion to dismiss or motion for summary judgment; or

(B) complete and final settlement with prejudice,

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**.

## VIII.  NOTICE OF CLAIM

(A) As a condition precedent to coverage under this **Liability Coverage Part**, the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than:

(1) if this Policy expires (or is otherwise terminated) without being renewed with the Insurer, ninety (90) days after the effective date of said expiration or termination; or

(2) the expiration of the Extended Reporting Period, if applicable

provided, that if the policy is cancelled for non payment of premium, the **Insured** will give to the Insurer written notice of such **Claim**, prior to the effective date of cancellation.

(B) If, during the **Policy Period**, the **Insureds** become aware of a **Wrongful Act** that may reasonably be expected to give rise to a **Claim**, and, if written notice of such **Wrongful Act** is given to the Insurer during the **Policy Period**, including the reasons for anticipating such a **Claim**, the nature and date of the **Wrongful Act**, the identity of the **Insureds** allegedly involved, the alleged injuries or damages sustained, the names of potential claimants, and the manner in which the **Insureds** first became aware of the **Wrongful Act**, then any **Claim** subsequently arising from such **Wrongful Act** shall be deemed to be a **Claim** first made during the **Policy Period** on the date that the Insurer receives the above notice.

**ENDORSEMENT NO:**1

**This endorsement, effective 12:01 am,** 1/01/14                                                    **forms part**
**of policy number**      00 KB 0282521-14

**issued to:**         TRI COUNTY TELEPHONE ASSOCIATION, INC.

**by:**             TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under all lines of insurance in this policy subject to the Terrorism Risk Insurance Act.

### A. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Department of the Treasury will reimburse insurers for 85% of that portion of insured losses attributable to "certified acts of terrorism" that exceed the applicable insurer deductible. However, if aggregate insured losses under the Terrorism Risk Insurance Act, as amended (TRIA), exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

### B. Cap On Certified Terrorism Losses

A "certified act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism under TRIA. The criteria contained in TRIA, for a "certified act of terrorism" include the following:

1. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA, exceeds $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro rata basis in accordance with procedures established by the Treasury,, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

### C. Application Of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omissions of a terrorism exclusion, or inclusion of coverage for terrorism, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, War Exclusion or the War And Military Action Exclusion.

All other terms and conditions remain unchanged.

© 2012. The Hartford

ENDORSEMENT NO:2

This endorsement, effective 12:01 am, 1/01/14                                    forms part
of policy number    00 KB 0282521-14

issued to:        TRI COUNTY TELEPHONE ASSOCIATION, INC.

by:               TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE OVATION<sup>SM</sup> POLICY**

PRIVATE CHOICE OVATION$^{SM}$ POLICY

If purchased:

I.   **DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART**, section **IV. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS**, is amended to add:

   - in connection with any **Claim** based upon, arising from, or in any way related to any:

     1.  discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or

     2.  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation;

     provided that this exclusion shall not apply to any **Derivative Action** otherwise covered under Insuring Agreement (A).

II.  **FIDUCIARY LIABILITY COVERAGE PART**, section **III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS, (A)** is amended to add:

   - in connection with any **Claim** based upon, arising from, or in any way related to any:

     1.  discharge, dispersal, release or escape of nuclear material, nuclear waste or radiation or any threat of such discharge, dispersal, release or escape; or

     2.  direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize nuclear material, nuclear waste or radiation;

All other terms and conditions remain unchanged.

*André A. Napoli*

André A. Napoli, President

ENDORSEMENT NO:3

**This endorsement, effective 12:01 am,** 1/01/14                                          **forms part**
**of policy number**      00 KB 0282521-14

**issued to:**      TRI COUNTY TELEPHONE ASSOCIATION, INC.

**by:**      TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WYOMING AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE OVATION**<sup>SM</sup> **POLICY**

I.  **COMMON TERMS AND CONDITIONS**, Section **IX. EXTENDED REPORTING PERIOD** is amended by the addition of the following:

> However, subparagraphs (C), (D) and (F) above notwithstanding, at the **Named Entity's** request the Insurer will offer an unlimited Extended Reporting Period, which reinstates the Limit of Liability, for an additional premium.

II.  **COMMON TERMS AND CONDITIONS**, Section **XVII. ACTION AGAINST THE INSURER, (B)** and **(C)** are deleted and replaced with the following:

> **(B)**  Solely with respect to the **Crime Coverage Part**:
>
> > **(1)**  No legal action shall be taken against the Insurer involving loss unless the **Insured** has complied with all the terms of this Policy; and
> >
> > **(2)**  No legal action shall be taken against the Insurer involving loss until ninety (90) days after the **Insured** has filed proof of loss with us; and
> >
> > **(3)**  No legal action shall be taken against the Insurer involving loss unless such action is brought within four (4) years from the date that the **Insured** discovers such loss.
>
> **(C)**  Solely with respect to the **Kidnap And Ransom/Extortion Coverage Part**:
>
> > No suit, action or proceeding for recovery of any claim under this Policy shall be sustainable in any court of law, equity or other tribunal unless all the requirements of this Policy shall have been complied with and the same be commenced within (4) four years after a claim for actual loss or expenses has been reported to the Insurer by the **Insured**.

III.  The **COMMON TERMS AND CONDITIONS** is amended to add the following:

- **RIGHT TO CLAIM AND NEGLIGENT ACT, ERROR OR OMISSION INFORMATION**

> **(1)**  The Insurer shall provide the following information to the **Named Entity** within thirty (30) days of receipt of the Insured's written request, but in no event more frequently than once in any twelve (12) month period:
>
> > **(a)**  Information on **Claims** involving the **Insured** closed within the preceding two (2) years limited to the date and description of the negligent act, error or omission and amount of payments, if any;
> >
> > **(b)**  Information on open **Claims** involving the **Insured** limited to the date and description of the negligent act, error or omission, amount of the **Claim** and amount of payment, if any;

**ENDORSEMENT NO:** 3

    **(c)** Information on notices of the negligent act, error or omission involving the **Insured** limited to the date and description of occurrence and amount of **Claims**; and

    **(d)** The total amount of reserve on open **Claims**. However, this information will not include any reserve specifically applicable to or identifying any **Claim** that is or may become subject to proceedings before state or federal courts.

**(2)** Amounts reserved are based on the Insurer's judgment. They are subject to change and should not be regarded as ultimate settlement values. The **Insured** must not disclose this information to any claimant or any claimant's representative without the Insurer's consent. If the Insurer cancels or elects not to renew this Policy, the Insurer will provide such information no later than thirty (30) days before the date of policy termination. In other circumstances, the Insurer will provide this information only if the Insurer receives a written request from the **Insured**. The Insurer compiles **Claim** and professional incident information for the Insurer's own business purposes and exercises reasonable care in doing so. In providing information to the **Insured**, the Insurer makes no representations or warranties to **Insureds**, any other Insurers, or others to whom this information is furnished by or on behalf of the **Insured**. Cancellation or non-renewal will be effective even if the Insurer inadvertently provides inaccurate or incomplete information.

All other terms and conditions remain unchanged.

André A. Napoli, President

ENDORSEMENT NO:4

**This endorsement, effective 12:01 am, 1/01/14**                                     **forms part**
**of policy number**   00 KB 0282521-14

**issued to:**   TRI COUNTY TELEPHONE ASSOCIATION, INC.

**by:**   TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WYOMING ACKNOWLEDGMENT - DEFENSE WITHIN LIMITS

This endorsement modifies insurance provided under the following:

**PRIVATE CHOICE OVATION[SM] POLICY**

I understand and acknowledge that the attached policy contains a Defense Within Limits provision which means that **Defense Costs** will reduce the Limit of Liability and may exhaust it completely and should that occur, the **Insured** shall be liable for any further **Loss** or **Defense Costs**. In addition, **Defense Costs** are applied against the Retention.

"**Defense Costs**" means:

   a.   reasonable and necessary legal fees and expenses incurred in the defense or appeal of a **Claim**;

   b.   **Extradition Costs**; or

   c.   the costs of appeal, attachment or similar bonds, provided that the Insurer shall have no obligation to furnish such bonds.

However, **Defense Costs** shall not include:

   **(a)**   salaries, wages, remuneration, overhead or benefit expenses associated with any **Insureds**;

   **(b)**   any fees, expenses or costs which are incurred by or on behalf of a party which is not a covered **Insured**; or

   **(c)**   any fees, expenses or costs which were incurred prior to the date on which the Insurer received written notice of **Claim** from the **Insured**.

All other terms and conditions remain unchanged.

_____
Insured's Signature

*André A. Napoli*

André A. Napoli, President

**ENDORSEMENT NO: 5**

**forms part**

This endorsement, effective 12:01 am,    1/01/14
of policy number    00 KB 0282521-14

issued to:    TRI COUNTY TELEPHONE ASSOCIATION, INC.

by:    TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WYOMING CANCELLATION AND NON-RENEWAL AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Name of Insured, Name of Company, Name of Partnership, Parent Company, Name of Insured Plan or Trust, Name of Insured Entity, Named Entity, Named Real Estate Investment Trust(s), Name of Sponsor Company or Insured stated in ITEM A or ITEM 1 of the Declarations Page.

I.    The Cancellation provision of the policy is deleted and replaced by the following:

### NOTICE OF CANCELLATION

A.    The **Insured** may cancel the Policy by mailing or delivering to the **Insurer** advance written Notice of Cancellation stating when thereafter such cancellation shall be effective.

B.    The **Insurer** may only cancel this Policy for nonpayment of premium.

C.    Notice of Cancellation will be sent not less than ten (10) days before the proposed effective date of cancellation.

D.    If cancelled by the **Insured**, the **Insurer** shall retain the customary short rate proportion of the premium hereon, except as otherwise provided in this Policy. If the **Insurer** cancels this Policy, the **Insurer** shall retain the pro rata proportion of the premium hereon.

E.    If this Policy is cancelled by the **Insurer**, the **Insurer** will send a written notice stating the reason for cancellation. The notice shall be delivered to the **Insured** and the agent or shall be mailed to the **Insured** and the agent at their last addresses of record with the **Insurer**. If mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof of mailing shall be sufficient proof of notice.

II.    The following provision is added:

### NOTICE OF NONRENEWAL

A.    The **Insurer** may non-renew this Policy at its expiration or anniversary date by giving written Notice of Nonrenewal not less than forty-five (45) days prior to the expiration or anniversary date of this Policy.

B.    Notice of Nonrenewal will be delivered or mailed to the **Insured** and the agent at their last addresses of record with the Insurer. If mailed, notice shall be deemed given when deposited in the United States mail, postage prepaid. Proof of mailing shall be sufficient proof of notice.

All other terms and conditions remain unchanged.

*André A. Napoli*

André A. Napoli, President

**Named Insured:**      TRI COUNTY TELEPHONE ASSOCIATION, INC.

**Effective Date:**      1/01/14

**Insurer:**      TWIN CITY FIRE INSURANCE CO.

**Policy Number:**      00 KB 0282521-14

## TERRORISM RISK INSURANCE ACT

## CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM

We previously notified you that in accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we must make "certified acts of terrorism" coverage available in the policies we offer.

The terrorism coverage as defined by the Act does not apply to Crime or Miscellaneous Professional Liability coverage parts, if any or all of those coverage parts are elected under this policy.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism. The criteria contained in TRIA for "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The United States Department of the Treasury will reimburse insurers for 85% of that portion of insured losses attributable to certified acts of terrorism that exceeds the applicable insurer deductible. However, if aggregate insured losses under TRIA exceed $100 billion in a Program Year (January 1 through December 31) the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

At that time we advised you that you will not be required to pay a premium for "certified acts of terrorism" coverage at this time. As a result of our notification, you have accepted "certified acts of terrorism" coverage. If, upon renewal of your policy, a premium is going to be charged for "certified acts of terrorism" coverage, we will provide you with notification of what that premium will be.



**Producer Compensation Notice**

You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WYOMING
# DOCKET NO. 85-74

This insurance contract has neither been filed with nor approved by the Insurance Commissioner of the state of Wyoming for use in this state. If you have any questions concerning coverage contact your agent or the company to obtain an explanation.

ENDORSEMENT NO:6

This endorsement, effective 12:01 am, 1/01/15                                    forms part
of policy number        00 KB 0282521-14

issued to:        TRI COUNTY TELEPHONE ASSOCIATION, INC.

by:        TWIN CITY FIRE INSURANCE CO.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIABILITY COVERAGE PARTS RUN-OFF REPORTING PERIOD ENDORSEMENT

This endorsement modifies insurance provided under:

**PRIVATE CHOICE OVATION<sup>SM</sup> POLICY**

I.   The following selected **Liability Coverage Part(s)** shall go into Run-Off as of the effective date of this Endorsement:

- [X] **DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART**
- [X] **EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
- [X] **FIDUCIARY LIABILITY COVERAGE PART**

II.  In consideration of the additional premium of: $67,676, effective 01/01/2015:

1.  **ITEM 3, (B)** of the Declarations is deleted and replaced with the following:

    **(B)** Expiration Date: 01/01/2021 (hereinafter, the "Run-Off Inception Date")

    12:01 a.m. local time at the address shown in ITEM 1

2.  **ITEM 7** of the Declarations is deleted and replaced with the following:

    **ITEM 7: Run-Off Reporting Period:**

    **Duration**: FROM: the Run-Off Inception Date TO: 01/01/2021 (the "Run-Off Expiration Date")
    12:01 a.m. local time at the address shown in ITEM 1

3.  **COMMON TERMS AND CONDITIONS** are amended as follows:

    a.  The following definition is added to section **II. COMMON DEFINITIONS**:

        - **"Run-Off Reporting Period"** means the period from the Run-Off Inception Date to the Run-Off Expiration Date set forth in Item 7 of the Declarations or any earlier cancellation date.

    b.  Section **IX. EXTENDED REPORTING PERIOD**, is deleted and replaced with the following.

        **IX. Run-Off Reporting Period**

        During the **Run-Off Reporting Period**, the **Insured** shall have the right to give written notice to the Insurer of **Claims** first made against any **Insured** on or after the Run-Off Inception Date but coverage shall only be provided for an **Insured's Wrongful Act(s)** occurring prior to the Run-Off Inception Date. Coverage for such a **Claim** is also subject to all of the warranties, terms, conditions, definitions, exclusions and endorsements of this Policy. The entire premium for the Policy shall be deemed fully earned as of the Run-Off Inception Date.

PO 00 H027 00 1212                              © 2012, The Hartford                              Page 1 of 3

**ENDORSEMENT NO: 6**

As a condition precedent to coverage under the **Run-Off Reporting Period**, the **Insureds** shall give the Insurer written notice of any **Claim** as soon as practicable after a **Notice Manager** becomes aware of such **Claim**, but in no event later than the expiration of the **Run-Off Reporting Period.**

c.  Section **XIII**. **CANCELLATION**, is deleted and replaced with the following:

**CANCELLATION**

The Insurer may cancel this Policy only for non-payment of premium by sending not less than ten (10) days notice to the **Named Entity** at its last known address. The **Insured** may not cancel this Policy.

d.  Section **XIV. CHANGES IN EXPOSURE,** is deleted.

4.  The following changes shall apply to the purchased **Liability Coverage Parts**:

**DIRECTORS, OFFICERS AND ENTITY LIABILITY COVERAGE PART:**

a.  Section **III. COVERAGE EXTENSIONS, (B)** is deleted.

b.  Section **IV. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS,** is amended to include the following:

- in connection with any **Claim** based upon, arising from, or in any way related to any **Wrongful Act** that actually or allegedly occurred on or after the Run-Off Inception Date;

c.  Section **VI. ADDITIONAL LIMIT OF LIABILITY FOR CLAIMS AGAINST MANAGERS, (C),** shall be amended such that the phrase, "during the **Policy Period**" shall be replaced with "during the **Run-off Reporting Period**".

d.  Section **VII. SECURITIES OFFERINGS** is deleted.

e.  Section **X. NOTICE OF CLAIM** is deleted.

**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART:**

a.  Section **III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS, (A),** is amended to include the following:

- in connection with any **Claim** based upon, arising from, or in any way related to any **Wrongful Act** that actually or allegedly occurred on or after the Run-Off Inception Date;

b.  Section **VI. NOTICE OF CLAIM** is deleted.

**FIDUCIARY LIABILITY COVERAGE PART:**

a.  Section **III. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS, (A),** is amended to include the following:

- in connection with any **Claim** based upon, arising from, or in any way related to any **Wrongful Act** that actually or allegedly occurred on or after the Run-Off Inception Date;

b.  Section **VIII. NOTICE OF CLAIM** is deleted.

III.  Nothing in this endorsement is intended, nor shall it be construed, to obligate or require the Insurer to:

1.  reinstate or increase any of the Limits of Liability of this Policy. The amount remaining under any applicable Limit of Liability as of the Run-Off Inception Date is the only amount available under this Policy during the **Run-off Reporting Period.**

**ENDORSEMENT NO:** 6

2.  to provide coverage during the **Run-off Reporting Period** under any **Liability Coverage Part** not selected in paragraph I herein or any **Non-Liability Coverage Part.** Any such coverage part shall be terminated as of the Run-Off Inception Date.

All other terms and conditions remain unchanged.

*Douglas Elliot*

Douglas Elliot, President

© 2012, The Hartford